[No. 14814.   In Bank. — December 12, 1891.]

ELWOOD BRUNER, PETITIONER, *v.* THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, AND HON. WILLIAM T. WALLACE, JUDGE, RESPONDENTS.

GRAND JURY — APPOINTMENT OF ELISOR— POWER OF JUDGE — CONSTRUCTION OF CODE. — Under section 226 of the Code of Civil Procedure, the power of a judge to appoint a private person as an elisor to summon a grand jury is not unlimited and unqualified; but the term "elisor" is employed in that section to designate a person to be appointed when the sheriff has been challenged as incompetent; and in the absence of such challenge, the judge or court has no power to appoint an elisor to summon the grand jury.

ID. — HARMONY OF CODES — USE OF WORD "ELISOR."— The word "elisor," as used in the Code of Civil Procedure, must be deemed to have been used with reference to its definition given in the Political Code.

ID. — LEGAL MEANING OF "ELISOR"— SUBSTITUTED OFFICER. — The word "elisor" has a peculiar and appropriate meaning in law, and the statutory definition and description of an "elisor" given in the Political Code is in full accord with the meaning that has always been given to it in the general law, viz., to denote a person appointed to serve process or return a jury when the sheriff and coroner have been challenged as incompetent.

ID. — OMISSION TO MENTION CORONER — ESSENCE OF DEFINITION. — The omission to mention the coroner, in section 266 of the Code of Civil Procedure, does not change the meaning of "elisor," who is essentially one who is a substitute for some disqualified officer.

ID. — JURISDICTION TO IMPANEL GRAND JURY — LAWFUL DRAWING — UN-
LAWFUL APPOINTMENT OF ELISOR — ILLEGALITY OF BODY. — The juris-
diction to impanel a grand jury comes from the law, and not from any
order of the court; and although a portion of a grand jury may have
been lawfully drawn, the body is illegal if an invalid order is made for
the summoning of the remainder of the jury by an elisor, where the
sheriff has not first been properly challenged as incompetent.

ID. — QUO WARRANTO — PROHIBITION. — *Quo warranto* does not lie against
a mere temporary employment like that of a jury; and the illegality of
a grand jury may be remedied by a writ of prohibition against the trial
of an indictment purporting to have been found by it, the court having
no jurisdiction to hear and determine it, and there being no other plain,
speedy, and adequate remedy at law.

APPLICATION for writ of prohibition to the Superior
Court of the city and county of San Francisco. The
facts are stated in the opinion of the court.

*Reddy, Campbell & Metson, J. C. Campbell,* and *Garrett
W. McInerney,* for Petitioner.

*A. L. Rhodes,* and *Attorney-General Hart,* for Respond-
ents.

McFARLAND, J. — This is an application for a writ of
prohibition to prohibit the superior court of San Fran-
cisco, department No. 6, and the judge thereof, from
proceeding further against petitioner upon two certain
paper-writings purporting to be indictments. The main
ground of the petition is, that the body of men who pre-
sented said writings had no legal existence as a grand
jury, and that therefore the respondents have no juris-
diction or authority to arraign or try petitioner upon
the same. Upon the record presented, two principal
questions arise: 1. Was said body a legal grand jury?
and 2. If it was not, then is prohibition a proper rem-
edy?

The material facts in the case are undisputed, and are
as follows: The respondent the presiding judge made
an order that twenty-five names be drawn in the usual
way from the "grand-jury box" (which contained the
names of 144 persons selected by the twelve judges of
the superior court), for the purpose of procuring a grand

jury.   After service by the sheriff on all of said persons who could be found, eighteen of them appeared.   Eight of them were excused by the court for good cause, and the others were accepted.   No further drawing from the grand-jury box (in which there remained more than one hundred names) was made, but ·thereupon the court made the following order: "And it now appearing to the court that of the entire number of persons drawn to serve as grand jurors there are only the number of ten proper and competent to so serve, and not excused, it is now here ordered that a sufficient number, to wit, the number of nine, good and lawful men be forthwith summoned by an elisor appointed by the court here for that purpose, to be and appear before the court here on Thursday, August 20, 1891, at twelve o'clock, meridian, to complete the said grand jury, and that Henry H. Scott be and is hereby appointed such elisor; and all further proceedings in impaneling a grand jury are continued until the twentieth day of August, 1891, at twelve o'clock, meridian." Another order was also made formally appointing said Scott elisor, who, after being sworn as such, returned nine other persons as grand jurors.   The whole of said nine persons was accepted, and thus the requisite number of nineteen grand jurors was procured and sworn. No reason was given why the jury was not completed by an additional drawing from the grand-jury box; nor was there any cause why, when the other method of getting jurors was adopted, the sheriff was not ordered to summon them, instead of an elisor.   No charge of partiality, interest, or disqualification of any kind was made against the sheriff, by affidavit or in any other manner; and the record shows that the sheriff was discarded and the elisor appointed simply because the court chose to do so.   And the contention of respondents' counsel is, that the power of a judge to appoint a private person to select a jury is unlimited and unqualified by any provisions of law, or any considerations whatever, — his will being supreme in the premises.   No question, therefore, arises here as to the jurisdiction of a court to pass upon the issue of

disqualification of a sheriff in such a case, because here there is no such issue.

The provisions of statutory law upon the questions here involved may be somewhat briefly stated. The formation of grand and trial juries is provided for in the Code of Civil Procedure, commencing with section 204, and the general provisions on the subject are these: In January of each year the superior court of the county must make an order designating the estimated number of grand jurors, and also the number of trial jurors, that will be required for the business of the ensuing year, and thereupon the board of supervisors must select from the qualified citizens of the county — taking them, as nearly as may be, from the different wards and townships in proportion to population — the number designated by the court. A certified list of these names is given to the county clerk, who must write the names of the grand jurors on separate pieces of paper of uniform appearance, and, having folded them so as to conceal the names, must deposit them in a box called the "grand-jury box." And whenever, during the year, a court orders a grand jury, it is provided that the jurors shall be drawn by the clerk, in the presence of court. He must shake the box, so as to mix the slips containing the names, before drawing, and must observe other statutory directions providing against the unfair drawing of particular names for particular purposes. (Secs. 219, 241.) In cities and counties of more than one hundred thousand inhabitants, which includes San Francisco, the jurors are selected in January by the judges of the superior court, instead of by the supervisors. (Sec. 204.) In all other respects the law is the same. Such is the general method provided by statute for the formation of juries, and it is as wise a method as could well be devised to procure fair and impartial jurors, and to prevent public officers from bringing together certain persons on a jury, in order to secure a certain result, — to annoy the innocent or protect the guilty.

There is, however, another provision of the code, — intended evidently for cases of neglect of duty or inad-

vertence, and to prevent, in some instances, great delay
or expense, — on which the right of the court to procure
a jury as it was procured in the case at bar is based.
The thought of the legislature in enacting the provision
would seem to have been directed more particularly to
trial than to grand jurors; but if its language be wide
enough to grant the power here contended for, then the
power exists.   But if the language does not grant such
power, then it does not exist; for it is granted nowhere
else.   The said provision is contained in section 226, and
is as follows: " Whenever jurors are not drawn or sum-
moned to attend any court of record or session thereof,
or a sufficient number of jurors fail to appear, such court
may order a sufficient number to be forthwith drawn and
summoned to attend the court, or it may, by an order
entered in its minutes, direct the sheriff, or an elisor
chosen by the court, forthwith to summon so many good
and lawful men of the county, or city and county, to
serve as jurors, as may be required, and in either case
such jurors must be summoned in the manner provided
in the preceding section."

It is apparent that the claim of power under the said
section 226 to do the thing complained of in the case at
bar should be closely scrutinized, and denied unless the
power be found to be clearly given; for if it exist, it is
a most arbitrary and dangerous power, — one that can
easily be used to unjustly destroy character, liberty, or
life.   And in determining whether or not there be such
legal power, we must discard all consideration of the
worthiness or unworthiness of the purpose sought to be
attained in any particular case.   There must be attrib-
uted to the learned judge of the court below good mo-
tives and purposes; but if he have the power claimed,
then such power must be conceded to every other person
who may at any time occupy a similar judicial position.
Under such power a court could easily procure the in-
dictment, and perhaps the conviction, cf any person
whom it deemed to be an offender, by simply appointing
a person favorable to its designs to select jurors with a

similar bias. In times of great public excitement, — political or otherwise, — a citizen who has incurred censure in certain quarters would have scarcely a remnant left of that protection which is afforded by a fair trial before an impartial jury; and to say that such unlimited power can be safely lodged with all the men who may happen to be judges would be to ignore human history and the principles of human nature. It must be remembered that unauthorized power may be used for bad as well as for good purposes. A spectator might, for the moment, look in safety and with complaisance upon the barbaric tumult of a mob, if he happened to be in sympathy with its present design; but let the fury of another mob be directed against him, or those whom he knows or believes to be innocent, and he will appreciate at once the value of legal protection. So, also, he may look lightly upon the spectacle of a jury packed for the purpose of prosecuting one whom he believes to be guilty; but if such a course were pursued toward him or his friend, he would have clear views of personal security and the sacredness of a jury trial. Under the best system that human wisdom can devise, an innocent man will, at long intervals, be punished, and a guilty one go free; but that a government of law is better than a government of unlimited personal power is a principle that has been fought out in English and American history, and established as a monument of liberty.

The asserted power of the court in the case at bar comes, if it comes at all, from these words, in the section last quoted, "or an elisor." It has no other source. The whole force and stress of the question involved rest on the word "elisor." The language is, not that the court shall direct the sheriff, "or some other person," or "any qualified citizen," or "any other person over the age of eighteen" (as in case of service of summons in civil cases), to summon the jury. There is no ordinary, general language used which would have denoted a legislative intent to give the court unlimited discretion under any and all circumstances, without any showing, to

choose whomsoever it pleases to pick out a jury.   Common language is discarded, and the exclusively legal word "elisor"—a word used nowhere else than in law language—is employed.   What is the meaning of that word? and what was the legislative intent in using it?

A rule of construction that has always obtained is aptly expressed in section 16 of the Code of Civil Procedure, as follows: "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others *as have acquired a peculiar and appropriate meaning in law*, or are defined in the succeeding section, are to be construed *according to such peculiar and appropriate meaning* or definition."   Now, the word "elisor" has a "peculiar and appropriate meaning in law," as much as any word that can be suggested.   It is not used at all in common language.   No one in private or business circles would think of calling an agent or trustee an "elisor."   It can be found rarely, if ever, in general literature.   It is doubtful if the majority of men of good intelligence have any notion as to its meaning.   Practically, it is known and used alone in law literature.   And in the law its meaning is clear and unquestioned.   It has always meant, and means now, a person appointed to perform certain duties pertaining to certain officers, when the latter are disqualified.   He was originally confined to the duty of returning a jury in the event of such disqualifications; but in some states his duties are extended to the service of other process, but only in the event of the disqualification of some other officer.   The provision for such appointment, as stated in Blackstone, is as follows: "If the sheriff be not an indifferent person,—as if he be a party to the suit, or be related either by blood or affinity to either of the parties,—he is not then trusted to return the jury, but the *venire* shall be directed to the coroners, who, in this as in many other instances, are the substitutes of the sheriff to execute process, when he is deemed an improper person.   If any exception lies to the coroners, the *venire* shall be directed

to two clerks of the court, or two persons of the county named by the court and sworn. And these two, who are called *elisors,* or electors, shall indifferently name the jury," etc. (3 Bla. Com. 355.) In Bouvier's Law Dictionary, elisors are defined as " persons appointed by the court to return a jury when the sheriff and coroner have been *challenged as incompetent.*" Such is the definition given in all the dictionaries, and such the sense in which the word is used in all the law books to which our attention has been called; and we do not understand that counsel for respondent claims differently.

Therefore, considering the universal meaning given in the law generally to the word " elisor," and without considering any other legislative provision upon the subject in this state, it would seem clear that when section 236 gives power to direct the sheriff or an elisor to summon a jury, it uses the word as designating a person to be appointed in the event that the sheriff has been " challenged as incompetent." Such construction is not only compelled by the only known meaning of the word, but brings the section into harmony with all the other sections relating to the selection of juries, the object of which is clearly to have jurors, as far as possible, fair and impartial. The sheriff is an officer elected by the people, and usually long before he is called upon to select a jury. If he should be secretly partial in any future case, it would be an accidental evil; he could not, at least, be appointed for such express purpose. And the fact that "coroner" was omitted (inadvertently or otherwise) from section 226 does not change the meaning of " elisor," — who is essentially one who is a substitute for some disqualified officer.

But our statutory law gives the same meaning to "elisor" that is given to it in the general authorities. It is provided that, "with relation to each other, the provisions of the four codes must be construed (except as in the next two sections provided) as though all such codes had been passed at the same moment of time, and

were parts of the same statute." (Pol. Code, sec. 4480.) (The next two sections refer to cases of conflict, and have no application here.) When, therefore, "elisor" is used in one code, it must be deemed to have been used with reference to its definition given in another code. The Political Code, from section 4175 to section 4193, deals with the duties of sheriff, and with process and notices and their service. It refers to both civil and criminal procedure. Section 4176 provides generally that the sheriff must "serve all process and notices in the manner prescribed by law." Section 4175 provides that "'process' as used in this article, includes all writs, warrants, summons, and *orders of courts of justice* or judicial officers. 'Notice' includes all papers and orders (except process) required to be served in any proceeding before any court, board, or officer, or when required by law to be served independently of such proceeding." It is impossible to imagine any sort of a thing ordered by any court, or judge thereof, which has to be executed by an officer that is not embraced in the above definitions; and the *general* statutory provision is, that it must be executed by the sheriff. Section 4191 provides, however, that if the sheriff be "a party to an action or proceeding, the process and orders therein .... must be executed by the coroner." And then, in section 4192, the office and functions of an elisor are provided for and described, as follows: "Process and orders in an action or proceeding *may be* executed by a person residing in the county, designated by the court, the judge thereof, or a county judge, and denominated an elisor, in the following cases: 1. When the sheriff and coroner are both parties; 2. When either of these officers is a party and the process is against the other; and 3. When either of these officers is a party and there is a vacancy in the office of the other, or when it appears by affidavit to the satisfaction of the court in which the proceeding is pending, or to the judge thereof, that both of these officers are *disqualified*, or by reason of any bias, prejudice, or other cause, would not act promptly or impartially." The only at-

tempt to break the force of this provision is by way of suggesting that the word "proceeding," as used therein, must be limited to that peculiar kind of *civil remedy* which is called, in section 23 and in sections 1063 et seq., Code of Civil Procedure, a "*special proceeding*." But there is no room for such construction. The provision in question does not say *special* proceeding, and the preceding sections and the whole article in which it occurs refer to both civil and criminal matters, and use the word "proceeding" in its general and well-known sense, which includes all steps taken and all things done, wherein judicial procedure is instituted or judicial action invoked. Even in a strictly civil action, when reciting what had occurred in the case, we say, such "*proceedings* were had," etc. This is the common meaning of the word "proceeding," when applied to things done in court or before judicial officers. Indeed, counsel for respondents, in his brief, refers, very naturally, to the formation of a grand jury as a "proceeding." And so we have a statutory definition and description of "elisor" in full accord with the meaning that has always been given it in the general law.

It is contended that no matter how a body of men may have been gathered together, its acts cannot be attacked if it be recognized by the court as a "grand jury," — upon the principle sometimes applied to the act of *de facto* public officers. One of respondents' counsel goes so far as to assert that the legal existence of a jury can be inquired into only by the proceeding of *quo warranto;* and while other counsel do not assume that very novel position, yet their views logically drift them there. But *quo warranto* does not lie against a mere temporary employment, like that of a jury; it lies only against the holder of a public office having a "fixed and permanent tenure." (7 Lawson's Rights, Remedies, and Practice, sec. 4040, and notes.) It would indeed be startling if a man could be put to the partial ignominy and hazard of a trial at the will of any set of men whom a court might choose to style a grand jury. But the cor-

rect doctrine on that subject was clearly stated by this court in *Levy* v. *Wilson*, 69 Cal. 105, where the court, through McKee, J., say: " One of the grounds stated in the petition is, that the indictment was found by a body of men styled a grand jury, that was not in law and fact ' a valid and constitutional grand jury.' If that be so, the accusatory paper returned by them to the court below as an indictment is *worthless and void* (*People* v. *Thurston*, 5 Cal. 69), and the court has no jurisdiction to try the petitioner upon it; for no person can be held to answer for crime, unless on information, after examination and commitment by a magistrate, or an indictment by a grand jury." In *People* v. *Thurston*, 5 Cal. 69, the same rule was stated, where Murray, C. J., delivering the opinion of the court, said: " I regard the indictment thus found by an illegally constituted body as worthless, and all proceeding based upon it *void*." (See also *People* v. *Coffman*, 24 Cal. 234.) And such is the tenor of the general authorities. In *People* v. *McNamara*, 3 Nev. 75, the court say: " An indictment found by a jury not legally constituted cannot be valid." In *McEvoy* v. *State*, 9 Neb. 163, the court say: " The grand jury must be selected in the manner prescribed by law. These is no security to the citizen but in a *rigid* adherence to the legislative will as expressed in the statutes for our general guidance." In *Stokes* v. *State*, 24 Miss. 623, it was held that (we quote from the *syllabus*, which correctly states the decision) " a grand jury consists of the requisite number of competent individuals, selected, summoned, impaneled legally, and sworn according to the forms of law, and if the law be not followed, the grand jury is incompetent to perform legal acts. . . . . The strict observance of the statute in regard to the formation of a jury cannot be dispensed with." In *Raiey* v. *State*, 19 Tex. App. 481, the court say that " a valid indictment is an indispensable prerequisite to a legal prosecution for felony." In *Finley* v. *State*, 61 Ala. 201, the court, after referring to an unauthorized order made by the lower court on procuring a grand jury, say: " The

exercise of such a power by the court would be a violation of the spirit of all our legislation, and would convert
the grand jury from a distinct independent body, drawn
and summoned by officers specially charged with that
duty, into a *mere dependency of the court,* chosen by its
absolute will.   The practical results of such a power are
too apparent to require discussion or statement.   There
is no reason for imparting to the court in this instance
more than mere error; but the power, exercised in the
hands of a capricious or an unscrupulous judge, would
destroy the purity and independence of the grand jury,
and pervert it from all the purposes of its institution."
There are numberless other authorities to the same point;
but it is useless to indulge in further citations.   And these
authorities are determinative of the other form in which
one of the respondents' counsel states his position, to
wit, that the court, having obtained jurisdiction of the
matter of forming a grand jury by first making a *valid*
order that certain jurors be drawn from the box, retained, or thus acquired, power to make the subsequent
*invalid* order that other jurors be selected by Scott.   But
that was the exact state of facts in many of the cases above
cited.   In *Finley* v. *State,* 61 Ala. 201, for instance, the court
had first made a legal order that certain grand jurors be
properly drawn, and had afterwards made an illegal order for the procurement of other jurors.   The fact is,
that the jurisdiction of the respondent to legally impanel
a grand jury did not come from any *order* which it made
in the premises.   That jurisdiction came from the law,
and was vested in the court before any order was made
by it.   But that power was limited.   There was room for
the play and exercise of discretion within the inclosure;
but the court could not get beyond that without overleaping or breaking down the barriers.   The appointment of Scott was an act entirely independent of and
distinct from the order for the drawing of jurors from
the box; and if there was any power to make it, such
power must be found in the law, and not in any previous
action of the court.   As said in High on Extraordinary

Legal Remedies, 2d ed., sec. 774, a court " will not be permitted to make a jurisdiction for itself, by coupling matters beyond its control with those upon which it may rightfully adjudicate."

Our conclusion is, that the court below had no authority in law to appoint said Scott to select grand jurors, because there was no case to which the power of appointing an elisor applied.

2. Is prohibition the proper remedy ?

Prohibition lies in all cases where there have been proceedings " without or in excess " of jurisdiction, and there " is not a plain, speedy, and adequate remedy in the ordinary course of law." (Code Civ. Proc., secs. 1102, 1103.) If the views hereinbefore expressed are correct, it is clear that the appointment of the so-called elisor was " without jurisdiction." Jurisdiction is usually defined as " the power to hear and determine"; but, of course, it is difficult to express in abstract terms a statement of the distinction between error in exercising jurisdiction, and jurisdiction itself, that can be readily applied to all cases as they may arise. The law endeavors to fix definitely everything that can in its nature be so fixed, so as to leave as little as possible to the judgment or caprice of those who administer it. But as many future events cannot, in the nature of things, be foreseen and provided for, it follows necessarily that much must be left to the discretion of courts and other tribunals. And the main test of jurisdiction in any particular matter is, whether or not discretion is given the court as to such matter. In the matter before us, for instance, if the law intended to give the power to appoint an elisor in the event of disqualification of the sheriff, it is apparent that the law could not determine beforehand the disqualification of any particular person who might happen to be sheriff at any future time. It could not say that any such sheriff would be actuated by "bias or prejudice." Consequently, the determination of the issue, when properly made, of such disqualification is necessarily left to the discretion of the court, and it

has jurisdiction to hear and determine that issue. But when there is no such disqualification, then there is no discretion given to determine whether an elisor should or should not be appointed. Consequently, when there is such an issue made, and the court finds *against* the disqualification, or when, as in the case at bar, it is admitted that there was no such disqualification, then no jurisdiction exists to make the " appointment." And the jury not being a legal body, and the so-called indictment being void, then, as before quoted from *Levy* v. *Wilson,* 69 Cal. 105, " the court has no jurisdiction to try the petitioner upon it." The conclusion follows that the proposed action of the court would be without and in excess of its jurisdiction.

The only other question is, Would petitioner have a plain, speedy, and adequate remedy in the ordinary course of law?

If there be such remedy, it must be by appeal. But it would be a difficult proposition to maintain that a defendant in a criminal case, forced through all the stages of a trial for felony without any indictment against him, or, which is the same thing in effect, upon a void indictment, would have a plain, speedy, and adequate remedy because after conviction and judgment, and perhaps after suffering the ignominy of imprisonment in the state prison, he could have the illegal proceeding reversed on appeal. But it is not necessary to discuss that question, because it has been held several times by this court that the point here made by petitioner cannot be reached on appeal. It was so held by our predecessors, in *People* v. *Southwell,* 46 Cal. 141. In that case the lower court had made an order reciting that there were objections to the sheriff, and that the court intended to submit certain charges against him to the grand jury, and for that reason appointing the coroner to summon the grand jurors. The defendant attacked, in the court below, the legality of the grand jury, upon the ground of such appointment of the coroner, by moving to set aside the indictment. On appeal, this court first held that the

appointment of the coroner was illegal, that the question could be reviewed on appeal, and that the judgment should be reversed; saying, among other things, that "a due regard to the rights of all persons accused or to be accused by the grand jury requires that that body should be summoned by the officer intrusted by law with the performance of that duty." But a rehearing was granted, and after further consideration, the court — Wallace, C. J., dissenting, and adhering to the former opinion — held that, "in its legal effect, the motion was a challenge to the panel," and that as the objection to the summoning of a jury by the coroner was not a statutory ground of challenge to the panel, the defendant had no remedy on appeal. In *People* v. *Welch*, 49 Cal. 174, the court below had allowed the district attorney to examine the sheriff as to his qualifications to summon a jury, and upon his testifying that he was biased against the defendant, had appointed the coroner to summon the jury. The defendant objected to the *venire* for that reason; but this court, on appeal, while holding that the action of the court below was wrong, held also that the question could not be reached, saying that *People* v. *Southwell*, 46 Cal. 141, "is authority for the proposition that the mistake of the judge in this case was not ground for challenge to the panel of trial jurors, or of objection to the *venire*." (It will be noticed that in both of the above cases there was an attempt in some form to attack the qualification of the sheriff.) The same rule was announced in *People* v. *Colby*, 54 Cal. 37, and *People* v. *Hunter*, 54 Cal. 65; and in each of said cases *People* v. *Southwell*, 46 Cal. 141, is mentioned and expressly approved. And unless all of these cases, and some later ones, are to be overruled, there is no way in which the question raised in the case at bar can be reached, except by the writ of prohibition.

And such, we think, was the decision of this court in *Levy* v. *Wilson*, 69 Cal. 105. In that case the petition was for a writ of prohibition. The petitioner set forth that he had been indicted by a body of men styled a

grand jury, but "that the body that found said indictment is not a grand jury, or a valid, legal, or constitutional body of grand jurors"; that the respondent, Wilson, judge of the court in which said indictment was pending, was about to proceed to try petitioner upon said indictment; and that he would so proceed unless prohibited by the order of this court. Whereupon he prayed that a " writ of prohibition " be issued " restraining said Hon. T. K. Wilson, as a judge of said superior court, from taking any further action or proceeding in said matter." (See petition in said case.) Now, the first question presented to the court, and which it must have decided affirmatively before looking further into the case, was this: Assuming that the body of men by whom petitioner was indicted was *not* a legal and valid grand jury, is prohibition the proper remedy? and has the court jurisdiction, under that proceeding, to grant the relief prayed for? If the decision had been adverse to the proposition that prohibition would lie in such a case, there would have been no occasion for the court proceeding further, and examining into the grounds upon which petitioner, in that particular instance, rested his charges of the invalidity of the jury; the case would have stopped at the threshold. And the question was fully presented and elaborately argued by opposing counsel. Louderback, for petitioner, argued strenuously that prohibition was the proper remedy, and cited numerous authorities to sustain his position; while the first point made by counsel for respondent, J. N. E. Wilson, was, that prohibition would not lie, — authority also being cited to the point. And so if the court had agreed with the position of respondent, it would have dismissed the proceeding upon that ground. But no such course was pursued. It entertained the writ of prohibition, and discussed the cases where it will and will not lie, and clearly *held* that it would lie when there was an indictment by a body not a valid and constitutional grand jury. Such is the necessary result of the action of the court, and such is the conclusion that must follow the

language which it used. In that case the petitioner, among other things, had alleged numerous irregularities as grounds of the illegality of the grand jury, and the court, in speaking of those, used this language: "Most of the grounds stated for the purpose are irregularities and errors in law occurring before and after the *finding* and *return* of the indictment. But as these are matters which are reviewable, and remediable on appeal in the action, they are not grounds for a writ of prohibition. Prohibition lies to arrest the proceedings of a judicial tribunal, when they are without or in excess of its jurisdiction; and the writ is issuable only in cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law." But having disposed of these minor matters, the court proceeds: "*One of the grounds stated* in the petition is, that the indictment was found by a body of men styled a grand jury, that was not in law and fact 'a valid and constitutional grand jury.' *If that be so*, the accusatory paper returned by them to the court below as an indictment is worthless and void (*People* v. *Thurston*, 5 Cal. 69), and the court has no jurisdiction to try the petitioner upon it." And so the express language of the court is a clear statement that if in that case the indictment had been found by a body of men who were not a legal grand jury, the peremptory writ of prohibition would have been granted. From every stand-point, therefore, the case must be taken as a full authority to the point that prohibition lies in the case at bar. But when the court proceeded and looked into the merits of that case, it found against the petitioner. The fact relied on was, that the court below, after having ordered some of the grand jurors drawn from the jury-box, had then ordered the *sheriff* to select the rest from the body of the county. The point insisted on by petitioner was, that, under the constitution, grand jurors must be "drawn," and that "drawn" meant taken from the jury-box by lot, and that the statutory provision allowing the court to direct the sheriff to select jurors was unconstitutional. On that point the

decision of the court was against the petitioner. While it says that "we are of the opinion that the court below, in exercising its discretion, *ought* to have ordered the panel to be filled by requiring the clerk, in open court and in the presence of the judge, to draw the requisite number of names from the grand-jury box, instead of requiring the sheriff to summon jurors from the body of the city and county," yet it holds that "the course adopted by the court was one authorized by the code." But if the court had held with the petitioner in his contention about the sheriff's power, it is clear that the writ would have issued. As to the case of *Ex parte Haymond,* 91 Cal. 545, it is sufficient to say that the distinction between a mere witness and a party indicted for a felony is too clear to need discussion.

We are of opinion, therefore, that there is no jurisdiction in the respondent to proceed with the trial of petitioner; that the latter has no "plain, speedy, and adequate remedy in the ordinary course of law"; and that prohibition is the proper remedy.

Petitioner makes the point that at the time of the order complained of there was a rule of the superior court of San Francisco, made by the twelve judges thereof, and never repealed or abrogated, as follows: "Rule 4. It shall be the duty of the presiding judge to preside over the drawing and impanelment of all grand juries required by law or by the public interests to be drawn. Grand jurors must in all cases be drawn from the list of grand jurors selected by the judges of this court, unless the grand-jury box containing the names of jurors so selected shall be exhausted without securing a grand jury"; also, that the constitution requires a grand jury to be *drawn,* and that "drawn" means taken by lot from a jury-box; also, that one of the alleged indictments against petitioner shows upon its face that if the crime charged was committed at all, it was committed in the county of Sacramento, and without the jurisdiction of respondents; also, that the trial jurors before whom he would be tried have likewise been procured by another similar order

appointing another elisor; also, that petitioner was compelled to appear before said grand jury, and testify as to the very charges upon which he was indicted.    But as our views heretofore expressed are determinative of the case, and as some of said questions are reviewable upon appeal, we deem it unnecessary to here discuss them.

Let the writ issue, restraining the respondents, as prayed for in the petition.

HARRISON, J., and PATERSON, J., concurred.

GAROUTTE, J., concurring. — This proceeding is an application for a writ of prohibition requiring the judge of department No. 6 of the superior court of the city and county of San Francisco to refrain from proceeding further in the trial of one Elwood Bruner, upon the ground that such course would be in excess of the jurisdiction of the court, the alleged indictment upon which the trial is predicated having no validity whatever, because found and presented by a body of men not a grand jury.

The questions presented upon this hearing are very important, and in some respects may be considered quite novel, when precedent is sought in the authorities of this state.    But neither the novelty nor the importance of the matter under investigation demands that its final determination should be reached otherwise than by a most careful consideration of principle and authority.

In this case it is so apparent that the court acted without its authority in the appointment of an elisor that the matter demands no extended consideration.    Section 4192 of the Political Code reads: "Process and orders in an action or proceeding may be executed by a person residing in the county, designated by the court, the judge thereof, or a county judge, and denominated an elisor, in the following cases: . . . . 3. When it appears by affidavit to the satisfaction of the court in which the proceeding is pending, or to the judge thereof, that both of those officers [sheriff and coroner] are disqualified, or by reason of any bias, prejudice, or other cause, would not act promptly or impartially."

XCII. CAL.—17

The impanelment of a grand jury is a *proceeding*, within the provisions of the foregoing section, and it is conceded that the sheriff labored under no disqualification; consequently the contingency for the appointment of an elisor in this case never arose.

Section 226 of the Code of Civil Procedure reads: "Whenever jurors are not drawn or summoned to attend any court of record or session thereof, or a sufficient number of jurors fail to appear, such court may order a sufficient number to be forthwith drawn and summoned to attend the court, or it may, by an order entered in its minutes, direct the sheriff, or an elisor chosen by the court, forthwith to summon so many good and lawful men of the county . . . . to serve as jurors, as may be required, and in either case such jurors must be summoned in the manner provided in the preceding section." Section 242 of the same code provides: "When, of the persons summoned as grand jurors and not excused, nineteen are present, they shall constitute the grand jury. . . . . If less than nineteen of such persons are present, the panel may be filled as provided in section 226 of this code."

Conceding that the provisions of the Political Code quoted have no application to the matter of the impanelment of a grand jury, and that section 226 of the Code of Civil Procedure is alone controlling, still, I have no hesitation in saying that, under that section, the court has no power to appoint an elisor, unless the sheriff is disqualified. From any point of view taken, it is the necessary conclusion that the proper construction of section 226 is, that the court may appoint an elisor only when the contingency has arisen, whereby the officer elected by the people to perform such service, and which service is a duty enjoined upon him by statute, has become disqualified to act in the matter. The word "elisor" is a technical, legal word, with a technical, legal meaning,—a meaning definitely and uniformly settled by all the authorities; and under elementary rules of construction, such meaning must attach to it in this section of the code.

An elisor is "an elector chosen by a court to return a panel of jurors, where the sheriff and the coroner are disqualified." (Anderson's Law Dict.)

It is not necessary to amplify upon the necessity in the interest of good government for a strict construction of the law pertaining to the selection of jurors. It is the spirit of the entire law pertaining to the subject that the names of the jurors, both grand and petit, should always be drawn from the box, rather than that the great responsibility should be cast upon any officer of going out upon the highways and byways, and, of his own choice and will, selecting jurors. Our present law, in many essential features, is the outgrowth of an act of the legislature found in the Statutes of 1857, page 168, which provided, among other things, that all grand jurors, and all trial jurors in criminal cases, without exception, should be drawn from the box. This act of 1857 was the direct result of the gross failure of justice, under a corrupt use of the power previously vested by law in the officers of the court to select jurors from the body of the county, and which abuse of power resulted in the organization of the vigilance committee of 1856,— a matter which is inseparably connected with the history of this city and state.

The principles which are applicable and controlling upon matters of *mandamus* are equally applicable and controlling upon proceedings in prohibition; and in 3 Burr. 1268, Lord Mansfield, in speaking of the object and scope of the writ of mandate, said: "It was introduced to prevent disorder from a failure of justice and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one. Within the last century it has been liberally interposed for the benefit of the subject and admeasurement of justice. The value of the matter or the degree of its importance to the public police is not scrupulously weighed. If there be a right and no other specific remedy, this should not be denied." The case of *Quimbo*

*Appo* v. *People*, 20 N. Y. 542, received an exhaustive consideration from the court of that state, and, after referring to many authorities upon the question as to when the writ of prohibition should issue, it said: "These cases prove that the writ lies to prevent the exercise of any unauthorized power in a cause or proceeding of which the subordinate tribunal has jurisdiction, no less than when the entire cause is without the jurisdiction." And again: "This shows that the writ was never governed by any narrow, technical rules, but was resorted to as a convenient mode of exercising a wholesome control over inferior tribunals. The scope of this remedy ought not, I think, to be abridged, as it is far better to prevent the exercise of unauthorized power than to be driven to the necessity of correcting the error after it is committed."

It would seem from the principles laid down in the foregoing authorities that in this case prohibition is pre-eminently the proper remedy. For if prohibition is not the remedy, then the defendant is barred from all remedy; for, as we will hereafter indicate, this court has repeatedly and uniformly held that the defendant has no appeal in such a case. It is confidently submitted that our judicial institutions are not so constituted but that the power to relieve an innocent man from an unjust and illegal prosecution and conviction must be found somewhere and in some manner in our judicial tribunals. Such is not only a principle of natural justice recognized by the intelligence and conscience of all civilized nations, but as a matter of abstract right, under our constitution, a defendant is entitled to a remedy.

It is unnecessary to quote further authorities from other states or countries; the question as to whether or not the writ of prohibition is the proper remedy has been squarely met and decided in the affirmative by this court in the case of *Levy* v. *Wilson*, 69 Cal. 105, and unless that case shall be overruled at this time, it stands all-controlling upon the case at bar. Like this, as shown by the verified petition filed, that was an application for

a writ of prohibition to restrain the Hon. T. K. Wilson, as judge of the superior court of the city and county of San Francisco, from proceeding with the trial of one Henry Levy, charged by indictment with the crime of burglary, and, among the various grounds relied upon by petitioner for the issuance of the writ, he alleged "that said body or alleged grand jury was not a grand jury, or a legal or constitutional grand jury." This court, after first remarking that "most of the grounds stated for the purpose are irregularities and errors in law occurring before and after the finding and return of the indictment," said: "One of the grounds stated in the petition is, that the indictment was found by a body of men styled a grand jury, that was not in law and fact 'a valid and constitutional grand jury.' If that be so, the accusatory paper returned by them to the court below as an indictment is worthless and void (*People* v. *Thurston,* 5 Cal. 69), and the court has no jurisdiction to try the petitioner upon it. For no person can be held to answer for crime, unless on information, after examination and commitment by a magistrate, or an indictment of a grand jury." And the court then proceeds to quote the definition of the words "grand jury," as declared by the law of this state in section 192 of the Code of Civil Procedure. The foregoing authority decides clearly and emphatically that an accusatory paper returned as an indictment by a body of men not a valid and constitutional grand jury is worthless and void, and a court has no jurisdiction to try a defendant upon such a paper. From the mere statement of the proposition, it would seem no lawyer would dispute it. Certainly no court would challenge it. These quotations are not *obiter dicta* of the court; they are the heart and life of the decision. At the threshold of the case, respondent insisted that petitioner had no remedy by prohibition (exactly what is being done here). This objection raised a question of law, and it was absolutely necessary for the court to meet it and dispose of it before entering upon an examination of the facts. The question was argued with

learning and ability for counsel for petitioner and re-
spondent, and it was in answer to that argument that
these principles of law were declared by the court.   If
it can be said that there is language to be found in
the case of *People* v. *Southwell*, 46 Cal. 150, opposed in
any way to these views, such language would seem
to be *dicta;* or if it ever had weight as authority, it
must be held to have been overruled by *Levy* v. *Wilson*,
*supra.*

The court had jurisdiction to impanel a grand jury,
to the same extent and in the same manner that it had
jurisdiction of the crime of murder.   It had no jurisdic-
tion to impanel a grand jury in a manner without the
law, and as its caprice might dictate; neither had it ju-
risdiction to take a man *vi et armis*, charged with murder,
and proceed to hear and determine his guilt or inno-
cence.   Conceding the court had jurisdiction of the of-
fense of murder, and by reason of a valid indictment
had jurisdiction of the defendant, it would have no
jurisdiction to proceed to try the defendant without a
jury; or, upon a verdict of guilty by a jury, it would
have no jurisdiction to render a judgment that the de-
fendant be crucified.   In the case of *Windsor* v. *McVeigh*,
93 U. S. 282, in the opinion of the court, this matter of
jurisdiction was clearly and succinctly discussed by that
eminent jurist Mr. Justice Field, wherein he said:
" Though a court may possess jurisdiction of a subject-
matter and of the parties, it is still limited in its modes
of procedure, and in the extent and character of its judg-
ments.   It must act judicially in all things, and cannot
then transcend the power conferred by the law.   If, for
instance, the action be upon a money demand, the court,
notwithstanding its jurisdiction over the subject and
parties, has no power to pass judgment of imprisonment
in the penitentiary upon the defendant.   If the action
be for possession of real property, the court is power-
less to admit in the case the probate of a will. . . . . .
The judgments mentioned, given in the cases supposed,
would not be merely erroneous, they would be absolutely

void, because the court, in rendering them, *would transcend the limits of its authority in those cases.* . . . . And the reason is, that the *courts are not authorized to exert their power in that way.* The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to *the established modes governing the class* to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it."

Were the acts of the court in the formation of this grand jury in excess of its jurisdiction?

Under the constitution, the court has jurisdiction to form a grand jury, but by reason thereof it would not follow that it had jurisdiction to form such grand jury in any way it saw fit. Section 192 of the Code of Civil Procedure says: "A grand jury is a body of men, nineteen in number, returned in pursuance of law." A grand jury is not a body of twenty men returned in pursuance of law, neither is it a body of nineteen men returned to the court in pursuance of no law.

The court has jurisdiction to impanel a grand jury, but it has jurisdiction to impanel it only in accordance with the provisions of law; and when it impanels it without the law, it is acting in excess of its jurisdiction, and such a body is not a grand jury, for it does not fill the test demanded by the section of the code just quoted. If, by reason of its general jurisdiction granted by the constitution to impanel a grand jury, it has the power to form one of nineteen men, not in pursuance of law, it would have the same power to form one consisting of forty men, or possibly forty women. It is no more requisite, viewed by the statute, that the grand jury should consist of nineteen men, than it is that it should be returned according to law. Indeed, from a stand-point of honest, conscientious results, the number of the grand jury is insignificant, as compared to the manner of its selection. When the law declares that a grand jury shall consist of nineteen men, and the court impanels a grand jury consisting of ten men or

twelve men, it acts without its jurisdiction, and such a body is without authority, and has no vitality whatever. There is no case to the contrary in this country, and very many directly to that effect. Such a body is not a grand jury, and in congregating it the court was not acting within its powers, for its authority was limited to the formation of a grand jury. In *State* v. *Symonds*, 36 Me. 132, the court, referring to three citizens who were placed upon the grand jury, said: "These persons were summoned and charged as grand jurors, and added to the panel, and acted in finding this bill. But as their selection for the purpose was not in conformity to the laws of this state, they constitute no part of a legal grand jury, . . . . and the indictment should be revoked, and forever held at naught." In *Doyle* v. *State*, 17 Ohio, 224 (the law there requiring a grand jury to consist of fifteen persons), the court said: "A less number is not a grand jury. Fourteen are not a grand jury. . . . . Hence in this case the indictment was not found by a grand jury. . . . . Hence that which purports to be an indictment was no indictment, and the party charged could not be put upon trial to answer. It should have been quashed or set aside as a nullity." In *Finley* v. *State*, 61 Ala. 206, the court said: "Without the agency of the sheriff, but in exclusion of it, the court orders a sufficient number of names to complete the grand jury from the by-standers in the court-room to be placed upon strips, and drawn. The statute imposes upon the sheriff the duty and responsibility of summoning the persons from whom a sufficient number to complete the grand jury are to be drawn, and the court could not exclude him from the performance of the duty, or transfer it to another, or assume to perform it. . . . . The exercise of such a power by the court would be in violation of the spirit of all our legislation, and would convert the grand jury from a distinct, independent body, drawn and summoned by officers specially charged with that duty, into a mere dependency of the court, chosen by its absolute will. The record affirmatively discloses that this accusation is not an in-

dictment; that it proceeds from and is the act of a body of men organized as a grand jury in violation of law. It follows that the judgment must be reversed." In *McQuillen* v. *State*, 8 Smedes & M. 587, the court said: "A grand jury does not, by our law, consist of thirteen or more men congregated, by the mere order of the court or by accident, in a jury-box, but it consists of the requisite number of competent individuals, selected, summoned, and sworn according to the forms of law, and if the law be not followed, it is an incompetent grand jury." In *Lott* v. *State*, 18 Tex. App. 630, in speaking of the acts of a grand jury composed of thirteen men, when the law required twelve, the court said: "Such a body of men is unknown to the law, and its acts, being wholly without authority of law, are absolutely null, and a pretended indictment preferred by such a body can have no legal standing or effect whatever. It cannot confer any jurisdiction of the case upon the court. Our conclusion is, that the matter presented by the motion in arrest of judgment is fundamental, and reaches the very foundation of this prosecution." In *People* v. *Thurston*, 5 Cal. 69, which case was approved in *Levy* v. *Wilson*, 69 Cal. 105, this court said, speaking through Murray, C. J.: "I regard the indictment thus found by an illegally constituted body as worthless, and all proceedings based upon it void."

The principle declared by the foregoing cases, to wit, that a body of men sworn as a grand jury, if not composed of the number required by law, or if not impaneled in pursuance of law, is not a grand jury, and that an accusatory paper presented to the court by such body is not an indictment, and that consequently the court has no jurisdiction to try a defendant upon such paper, has been upheld and affirmed directly in many other cases. (See *Rainey* v. *State*, 19 Tex. App. 479; *State* v. *Williams*, 5 Port. 130; *Stokes* v. *State*, 24 Miss. 621; *Burley* v. *State*, 1 Neb. 385; *State* v. *Lawrence*, 12 Or. 297.)

Respondent insists that the court having jurisdiction

to form a grand jury, and its first order to draw the names of twenty-five persons from the box being strictly within the requirements of the law, the court thereby obtained jurisdiction, and all matters and orders done and made by the court toward the formation of a grand jury subsequent to that time were not jurisdictional, but simply erroneous. This position has no sound support. The first order made by the court in the process of impanelment of the grand jury was no more jurisdictional than the second order made by the court. The court, by exercising its jurisdiction in making a valid order, could not thereby create in itself jurisdiction to make a void order. In this case the grand jury was formed under two separate and independent orders of the court, and under two separate and distinct provisions of the statute. If one was jurisdictional, the other was equally so. The court had the power to make the first order, and exercised it by ordering that the names of twenty-five persons be drawn from the box; the result of this order was the securing of ten grand jurors. It had no power to make the second order, and necessarily, such order had no legal results; the nine men selected by the elisor were intruders, and necessarily no grand jury was impaneled.

The action of the court in appointing an elisor cannot be mere error, any more than a judgment of imprisonment for life upon a conviction for petit larceny would be mere error. In both cases the fatality is an absence of power to make the order. If it is simply an error of the court to appoint an elisor and order him to summon nine men as grand jurors, without any authority in law, it would only be an error of the court to have selected the men itself from the by-standers or from its personal friends. It would have been simply an error of the court to have impaneled a grand jury consisting of ten men. If an order appointing an elisor to summon nine men as grand jurors, made in direct contravention of law, is mere error, then an order for

the elisor to summon nineteen men to compose a grand jury would be mere error, and a grand jury could be impaneled so wholly and entirely irregular as to outrage and shock the law at all points, and still it would be mere error.  This is the necessary result of such doctrine, and it would be a grave impropriety to hold it to be the law.

We have now determined that the court acted in excess of its jurisdiction in the impanelment of this grand jury.  Has the defendant a plain, speedy, and adequate remedy other than by prohibition?

In the cases of *People* v. *Southwell*, 46 Cal. 141, *People* v. *Welch*, 49 Cal. 174, *People* v. *Colby*, 54 Cal. 37, *People* v. *Hunter*, 54 Cal. 65, *People* v. *Goldenson*, 76 Cal. 328, and others not necessary to note, it was held that a defendant had no appeal to this court from such action of the trial court in impaneling a grand jury as is disclosed by the record in this case.  As early in the history of the legal jurisprudence of this state as the case of *People* v. *Hunter*, 54 Cal. 65, this court said: "Such must be considered the settled doctrine in this state."  Conceding that these cases do not establish the true rule, and that the defendant can appeal to this court to right such wrongs, yet such remedy is not plain and speedy, neither is it adequate.  It cannot be said to be plain and speedy, when at every mile-stone marking his path to this court there may be found an obstruction completely blocking his way in the form of a supreme court decision, placed there by the very court toward which he is traveling for relief.  His remedy by appeal is not adequate. To say that an innocent man can be charged and convicted of a crime involving the greatest moral turpitude, and lie in a felon's cell until he can be set at liberty when his appeal has dragged its slow length along to this court, and that such remedy is adequate for his wrongs, is a travesty upon the use and meaning of words.  In the case of *Havemeyer* v. *Superior Court*, 84 Cal. 399, 18 Am. St. Rep. 192, this court decided that the

remedy by appeal was not adequate, where the appellant might suffer irreparable damage by a destruction of his property pending the appeal.   It would follow that it is a very conservative view to say that in this case the remedy by appeal is not adequate; for loss of liberty and irreparable damage to character and good name would result to this defendant, pending his appeal.   The remedy is not adequate to him, for, pending his appeal, wounds would be inflicted no surgeon's art could heal.

For the foregoing reasons, I think the writ should issue as prayed for.

BEATTY, C. J., dissenting. — I concur in so much of the opinion of the court as holds that the appointment of an elisor to select and summon talesmen for the completion of the grand jury was, in the absence of any finding of disqualification of the sheriff, a violation of the statutory provisions regulating the formation of grand juries.   But I do not think it can be held that the superior court is exceeding its jurisdiction in proceeding with the trial of the petitioner upon the indictments which have been presented against him, and if not, its action cannot be arrested by prohibition.

Precisely the same vice which infects the proceedings in this case was disclosed in the Southwell case, and several later cases in which it has been followed (*People* v. *Southwell*, 46 Cal. 141; *People* v. *Colby*, 54 Cal. 37; *People* v. *Hunter*, 54 Cal. 65), in all of which it was expressly held that for such a violation of the statutory provisions on this subject there was no remedy by appeal.   This would, of course, be, as the court intimates, only an additional reason for holding that prohibition is the proper remedy, if, as contended, the superior court has no jurisdiction to try an indictment found and presented by a body so irregularly organized.

But I think that while the only point expressly decided in the Southwell case was, that there was no rem-

edy by appeal, the decision necessarily implies that in such cases the superior court has jurisdiction to proceed to trial and judgment.  For surely it ought not to be supposed, in the absence of anything necessarily involving such conclusion, that this court meant to decide that the legislature by any sort of amendment to the Penal Code could oust it of its constitutional appellate jurisdiction in criminal cases; that it could, by merely omitting to provide for grounds of challenge to the panel of a grand jury, or of motion to quash or set aside an indictment, enable the superior court to try and convict a citizen upon an accusation presented by a body of men lacking in the essential constitutional qualifications of a grand jury, without having its action reviewed on appeal to this court, where, by the constitution itself, the power of review in such cases is lodged.  Such a decision, I say, is not to be imputed to the court when it has not been expressly made, unless it is necessarily to be implied from the conclusion reached, or the reasoning upon which such conclusion is founded; and I see nothing in the opinion of the court in the Southwell case from which it can be implied that the action of the superior court in pretending to try an indictment presented by a body of men claiming to be a grand jury, but which is not a *valid, constitutional* grand jury, could not be reviewed on appeal.  On the contrary, I find the distinction stated with quite sufficient clearness between a *de facto* grand jury, whose indictments, so far from being void and subject to collateral attack, are legally sufficient to justify the court in proceeding to try them, and a body claiming to be a grand jury, but having no semblance or color of authority.  With respect to such a body it is distinctly intimated that it would be the duty of the superior court to strike from its files any pretended indictment that it might present, and (as I think must be understood) that if the superior court neglected its duty in that respect, its action would be reversed on appeal.  But whether or not this is what the court meant to say, it certainly said nothing to the contrary effect.

What was said in the subsequent case of *Levy* v. *Wilson*, 69 Cal. 108, is also perfectly consistent with this view. An accusatory paper returned as an indictment by a body of men not constituting "*a valid, constitutional* grand jury" is worthless and void, and no court has jurisdiction to bring the person accused to trial upon it.

But what is a valid, constitutional grand jury? It is, I think, a body of men possessing the constitutional requisites of a grand jury as distinguished from merely statutory requisites. As to the former, the legislature cannot dispense with them, nor can it, by altering or refusing to enact rules of procedure, deprive this court of the constitutional power to enforce their observance through the medium of an appeal or writ of error, or by prohibition, when that may be necessary. But as to mere statutory regulations in regard to the selection and summoning of talesmen to complete the panel of a grand jury, — which exist only by the grace and favor of the legislature, — it is entirely competent for the same power which has prescribed them to determine what, if any, advantage may be taken of their violation.

This principle I find very clearly and forcibly stated by Judge Andrews, delivering the opinion of the court of appeals of New York in the case of *People* v. *Petrea*, 92 N. Y. 144: "If the defect in the constitution of the tribunal deprived it of the character of a grand jury in a constitutional sense, there can be no doubt that the court would have been bound to have taken notice of it, although no statute authorized it, or even if the statute assumed to preclude the raising of the objection. But when the defect is not of that character, and the defendant may be held to answer the indictment without invading any constitutional right, then the question is one of procedure merely, and the right of the defendant to avail himself of the objection is subject to the regulation and control of the legislature."

This, it seems to me, is unquestionably a sound view, and it is conclusive of this case. Here the grand jury was not selected as the law prescribes, but it is not lack-

ing in any constitutional requisite. It is composed of nineteen members,— the number prescribed by the statute for the time being,— a number within the common-law limits of not less than twelve nor more than twenty-three. It has been impaneled, sworn, and charged with the duties of a grand jury by, and is acting under, the direction of a court vested with the power to impanel it, and it was drawn and summoned in the sense of the constitution. (Art. I., sec. 8.) As to this point, I do not think that the constitution means anything more than that a panel must be drawn in the first instance. It does not require in case, after a regular drawing and summoning of the panel, there are not a sufficient number to form a grand jury, that talesmen for its completion should be drawn. In other words, I hold, as it has invariably been held heretofore, that this provision of the constitution was not intended to change the law existing at the date of its adoption. These indictments are therefore not void, and the legality of the grand jury cannot be attacked otherwise than by motion or challenge of a person indicted upon some ground allowed by the statute.

As to the objection that the indictment for bribery in this case shows on its face that no part of the offense was committed in San Francisco, no answer is made, and I do not see how any answer can be made to it. But although it seems pretty clear that the superior court of San Francisco has no jurisdiction of the offense charged, I do not think this court should interfere by prohibition, until the particular defect referred to has been called to the attention of the superior court by demurrer, and even then appeal would be the usual and sufficient remedy.

The other objections to the indictment do not, in my opinion, involve any question of jurisdiction. Upon these grounds, while fully concurring with the court in its construction of the statute relating to the appointment of an elisor to select and summon talesmen, I am constrained to dissent from the conclusion that the error of the superior court can be corrected by prohibition.

DE HAVEN, J., dissenting. — I dissent. The indictments pending against petitioner in department No. 6 of the superior court of the city and county of San Francisco were returned by a body of men impaneled by that court as a grand jury, and charged by it with the duties pertaining to such a body. In my opinion, the learned judge of that court committed an error in making the order which directed the summoning of some of its members by an elisor, in the absence of a showing that the sheriff was disqualified to perform that duty. Section 226 of the Code of Civil Procedure provides: "Whenever jurors are not drawn or summoned to attend any court of record or session thereof, or a sufficient number of jurors fail to appear, such court may order a sufficient number to be forthwith drawn and summoned to attend the court, or it may, by an order entered in its minutes, direct the sheriff, or a elisor chosen by the court, forthwith to summon so many good and lawful men of the county, or city and county, to serve as jurors, as may be required, and in either case such jurors must be summoned in the manner provided in the preceding section." This section does not, when properly construed, give to the judge an absolute discretion to select any person to summon jurors to complete the panel, without reference to the sheriff or his disqualifications. If such were the intention of the law, it would have been more clearly expressed by omitting the word "sheriff" altogether, and simply providing that the jurors should be selected by some person named for that purpose in the order, and then the court would have been left with complete discretion to select the sheriff or any other person to execute its order; but such is not its language, and giving due effect to the meaning of the word "elisor," in the connection in which it is here used, the true meaning of this section is, that the court shall direct the sheriff to summon such jurors, or in case of his disqualification, some person to act in his place. But this error of the court did not convert the persons impaneled by it as a grand jury into a body of usurpers, without any sem-

blance of authority, and whose accusations are mere
nullities, which the court is without jurisdiction to en-
tertain.   The court had undoubted authority to impanel
a grand jury.   Its order made for the drawing was regu-
lar, and when, in due course of the proceeding, certain of
those drawn were excused from serving, and there did not
remain a sufficient number of competent jurors to form
the panel, the court was called upon, in the exercise of its
jurisdiction, to obtain additional jurors; and how this
should be done was a matter for the court then to deter-
mine by its order, and involved the exercise of discretion
as to whether they should be drawn or summoned, and
in the event that the latter mode was adopted, required
the exercise of judgment, — a decision whether, under the
law, the execution of its order should be directed to the
sheriff or some other person.   That the judge of that
court was thus called upon to determine what the law
required in the premises is evident, and that this was
the exercise of a judicial function in a matter over which
he had perfect jurisdiction is, to my mind, so clear that
the mere statement of the proposition ends all argument
upon the point.   The right to act in the matter at all,
and to decide for the time being what was the law ap-
plicable to the proceeding before the court, constituted
jurisdiction in every sense of that term; and no mere
error in the decision of the question thus regularly before
it could deprive the court of jurisdiction over that pro-
ceeding, or make its orders therein subject to a collateral
attack as absolutely null and void.

The court having this jurisdiction over the general pro-
ceeding, it follows necessarily that the jury impaneled by
it is a *de facto* body, having the right to exercise the func-
tions of a grand jury, and whose indictments can only
be questioned in the court to which they were returned,
with the right of appeal from any judgment therein.
Every possible objection which, under the law or consti-
tution, can be taken to the formation of such grand jury
must be presented by the accused in that court, and not
by an independent and collateral action in another court.

That the objection here urged against this particular grand jury is a mere irregularity, and does not at all affect the jurisdiction of the superior court over the indictments returned against petitioner, was, in my opinion, clearly and distinctly held in the case of *People* v. *Southwell*, 46 Cal. 141. In that case, as in this, the jurors had been selected and summoned by an unauthorized person, and this court, on appeal, said this was only an irregularity, and one for which the statute did not even provide a remedy. In thus deciding and affirming a judgment of conviction, the court necessarily held that such an irregularity was not fatal to the jurisdiction of the court to try the defendant upon an indictment returned by a grand jury, many of whose members had been irregularly and improperly summoned. It was there said: "It is claimed on behalf of the defendant that if the grand jury was not selected and summoned as required by law, it was an illegal body, which usurped the functions of a grand jury, and its acts are wholly void." In the course of its opinion, and in reply to this position of the appellant in that case, the court, in pointing out the difference between a grand jury which had such technical defects in its organization, and a body wholly without authority, and whose indictments could not properly be considered by the court, further said: "It may be that if a paper be presented to the court in the form of an indictment, but which was found by a body of men having no semblance of authority to act as a grand jury, it would be the duty of the court to strike it from the files as a mere nullity, and as wholly worthless for any purpose. It would have no proper place among the files of the court, and ought, therefore, to be removed from them. . . . . But it is not every slight irregularity which may occur in the formation of a grand jury which would justify the court in striking the indictment from the files as a nullity. Otherwise there would be no need of a challenge to the panel, as all objections to the grand jury could be taken on a motion to strike the indictment from the files. The true

distinction lies between the acts of a body having no semblance of authority to act at all, and of a body which, though not strictly regular in its organization, is, nevertheless, acting under a color of authority. In the former case, the acts of the wholly illegal body are nullities, having no proper place among the files of the court. But in the latter case, section 182 of the statute prescribes the only method by which mere irregularities in the formation of the grand jury can be inquired into. The case at bar comes within the latter category. On the facts disclosed by the record, it cannot be affirmed that the grand jury had no semblance of authority, and were acting without color of lawful right. It was regularly drawn from a grand jury list, duly certified, and some of them having been excused, the deficiency was supplied by a *venire* properly issued by the order of the court. We think the court erred in directing the *venire* to be summoned by the coroner instead of the sheriff. But this was only one of the irregularities for which the statute has failed to provide a remedy. A grand jury summoned in pursuance of a *venire* duly issued cannot be said to be a wholly illegal body having no semblance of authority merely because the court erroneously directed the *venire* to be served by the coroner instead of the sheriff. It was an error of which the defendant, perhaps, might justly complain, but the statute has provided no remedy for it."

This decision has never been overruled, but, on the contrary, has been repeatedly referred to as authority in later cases in this court, and seems to be conclusive of every question presented by this record. Indeed, my attention has not been called to the decision of any court, either in this state or elsewhere, in which it has been held that an irregularity in the formation of a grand jury of the character here complained of can be corrected in a collateral action.

In Wharton's Criminal Law and Practice, sec. 350, it is said: " If the body by whom the indictment was found was neither *de jure* nor *de facto* entitled to act as

such, then the proceedings are a nullity, and the defendant, at any period when he is advised of such nullity, is entitled to attack them by motion to quash, or by plea in abatement, or, when the objection is of record, by motion in arrest of judgment. He is, in most jurisdictions, sheltered by constitutional provisions from prosecution, except upon indictment found by a grand jury, and when the body finding the indictment is not a grand jury, either *de jure* or *de facto*, then its prosecution must fall when the question is duly raised. But a *de facto* grand jury cannot be deemed a nullity under this provision of the constitution."

This seems to me to be the true rule, and in the case of *Ex parte Haymond*, 91 Cal. 545, we held, upon the same state of facts disclosed in this record, that this same grand jury was a *de facto* jury. This being so, in my opinion, the superior court has jurisdiction to proceed upon the indictments, and any judgment which it might make would not be void, and therefore the writ should be denied.

In the foregoing I have assumed that the offenses charged against petitioner are alleged to have been committed in whole or in part within the city and county of San Francisco. If, however, the indictments are defective in this respect, as it is not shown that the attention of the superior court has been called thereto, petitioner is not entitled as a matter of right, at this time, to the writ demanded.

Sharpstein, J., dissenting. — I dissent. It seems to me that the only serious question in this case is, whether the court, in the absence of an affidavit showing that the sheriff and coroner were " disqualified, or by reason of any bias, prejudice, or other cause would not act promptly or impartially," has the power to direct " an elisor chosen by the court forthwith to summon so many good and lawful men of the county, or city and county, to serve as jurors, as may be required," which was fully and carefully considered in *People* v. *Southwell*, 46 Cal. 141,

and determined against the contention of the petitioner. Under the law then in force, the coroner was authorized to execute process only when the sheriff was a party to an action or special proceeding.  It nowhere appears, nor is it suggested, in *People* v. *Southwell*, 46 Cal. 141, that the sheriff was disqualified to serve the *venire*.  Therefore the power of the court to direct it to the coroner, in that case, rested upon no better foundation than the power of the court in this case to direct it to an elisor.  The court, in *People* v. *Southwell*, 46 Cal. 141, very pertinently remarked that " a grand jury summoned in pursuance of a *venire* duly issued cannot be said to be a wholly illegal body having no semblance of authority merely because the court erroneously directed the *venire* to be served by the coroner instead of the sheriff."

In that case the court said: "We think the court erred in directing the *venire* to be summoned by the coroner instead of the sheriff."  That shows that it was not a case in which the court was authorized by law to direct the *venire* to the coroner.  Had it been, the court could not have said that it was error to so direct it.  I think the opinion of the court in *People* v. *Southwell*, 46 Cal. 141, is amply supported by reason and authority, and that it would be much safer to follow than to overrule it.

I therefore think the application for a writ of prohibition in this case should be denied.