[No. D058635. Fourth Dist., Div. One. Apr. 17, 2012.]

CYNTHIA K. THORNTON, Plaintiff and Appellant, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

1404

**COUNSEL**

Cynthia K. Thornton, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Chris A. Knudsen and Patti W. Ranger, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**IRION, J.**—The question on this appeal from a judgment of dismissal after a demurrer was sustained without leave to amend is whether, under Government Code section 996.4 or Labor Code section 2802, an employee of a public agency who is hired into a different position within the agency has a right to reimbursement from the agency for attorney fees and other expenses the employee incurred in an investigation by law enforcement of potential conflicts of interest in the hiring, when no formal civil action or proceeding was commenced against the employee. We hold the answer is no and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Facts*

Because this case comes to us after entry of a judgment of dismissal based on the sustaining of a demurrer without leave to amend, we accept as true the well-pleaded material allegations of the complaint. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054].) Those allegations are as follows:

In January 2000, Governor Gray Davis appointed Cynthia K. Thornton to the California Unemployment Insurance Appeals Board (the Board), and elevated her to chairperson in May of that year. Thornton held that position until her term expired in October 2005.

After Thornton had chaired the Board for two years, several long-term employees of the Board encouraged her to take an examination that, if passed, would allow her to serve as an administrative law judge (ALJ) for the Board and other state agencies. She passed the examination and was added to the list of candidates eligible for ALJ positions.

Near the end of Thornton's term as chairperson of the Board, the Board's executive director offered her a job as an ALJ for the Board. The executive director and the Board's chief counsel assured Thornton it was permissible for a Board member to be offered and to accept a position as an ALJ for the Board. Thornton accepted the offer, and she began her duties as an ALJ in the Board's San Diego office in November 2005.

After Thornton was hired, the Board's executive director "expressed concern that he would be criticized by the incoming [Governor] for hiring a [Board] member . . . who had [been] appointed by the prior Governor from the other political party." The executive director therefore "took the unusual step of asking the [Board] to vote on the job offer to [Thornton] for 'political cover'—even though she had already been offered the job." The Board, "without input or participation from [Thornton]," voted to extend her an offer for a position as an ALJ.

Three years after Thornton began her duties as an ALJ, the State Auditor issued a report concerning, among other matters, the Board's hiring practices. The report mentioned the hiring of a former Board member as an ALJ for the Board. Although the report did not name Thornton, the hiring referred to was hers. The State Auditor was required to, and did, refer the matter to the Sacramento County District Attorney and the Attorney General for investigations into whether Thornton's hiring violated Government Code section 1090[1] or any other state conflict of interest laws.[2]

After Thornton learned of these referrals, she retained an attorney to assist her with the investigations. The attorney had numerous conversations with and wrote several letters to the investigating authorities.

In January 2009, Thornton's attorney requested that the Board provide her with a defense pursuant to Government Code section 995. The Board denied the request.

By April 2009, the district attorney and the Attorney General informed Thornton's attorney that they had concluded their investigations and would not be filing either a civil claim or a criminal charge against Thornton. The following month, Thornton filed a claim under the Government Claims Act (Gov. Code, § 810 et seq.) for reimbursement of the attorney fees and other expenses she incurred in connection with the investigations, but the claim was rejected.

B.  *The Litigation*

Thornton sued the Board for reimbursement of the attorney fees and other expenses she incurred in responding to the district attorney's and the Attorney

---

[1] As pertinent here, Government Code section 1090 provides: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

[2] Although Thornton did not describe the focus of these investigations in her complaint, she represented at oral argument that the investigations focused on whether she caused the Board, while she was its chairperson, to enter into a contract to employ her as an ALJ.

General's investigations of the circumstances of her hiring as an ALJ for the Board. In her complaint, Thornton asserted she was entitled to reimbursement under two statutes, Government Code section 996.4 and Labor Code section 2802.

The Board demurred to the complaint. The Board argued Thornton was not entitled to reimbursement under Government Code section 996.4 because (1) there was no civil action or proceeding she had to defend and (2) the matter investigated—her hiring as an ALJ for the Board—did not arise out of an act or omission in the scope of her employment. The Board argued Thornton was not entitled to reimbursement under Labor Code section 2802 because (1) the statute does not apply to public employees; (2) no formal civil claim or criminal charge was instituted against Thornton; and (3) the attorney fees and other expenses incurred by Thornton were not a direct consequence of the discharge of her duties as an employee.

The trial court, over Thornton's opposition, sustained the Board's demurrer without leave to amend on the grounds "there was no action or proceeding filed against her, and the investigation was not of a civil nature but of a criminal nature." A judgment of dismissal followed.

II

DISCUSSION

Thornton contends the judgment must be reversed because she is statutorily entitled to reimbursement from the Board for the attorney fees and other expenses she incurred in connection with the district attorney's and the Attorney General's investigations of the circumstances of her hiring as an ALJ for the Board. Thornton raises three arguments on appeal: (1) the investigations were "civil action[s] or proceeding[s]" within the meaning of Government Code sections 995 and 996.4;[3] (2) the investigations concerned actions taken in the course and scope of her employment within the meaning of those sections; and (3) she necessarily incurred the attorney fees and expenses "in direct consequence of the discharge of . . . her duties" within the meaning of Labor Code section 2802, subdivision (a). We disagree.

---

[3] In support of this argument, Thornton has asked us to take judicial notice of a published recommendation of the California Law Revision Commission concerning the enactment of these statutes. "A request for judicial notice of published material is unnecessary. Citation to the material is sufficient." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9 [77 Cal.Rptr.2d 709, 960 P.2d 513].) We therefore deny Thornton's request as unnecessary.

As we shall explain, we conclude the Board had no obligation to reimburse Thornton under Government Code section 995 or 996.4 because no civil action or proceeding was ever instituted against her. We also conclude the Board had no obligation to reimburse her under Labor Code section 2802 because that statute does not apply here. Because these conclusions dispose of Thornton's claims, we need not and do not address her arguments that the expenses she incurred in responding to the investigations of potential conflicts of interest in her hiring arose out of an act or omission by Thornton within the course and scope of her employment.

## A. Standard of Review

A demurrer tests the legal sufficiency of the factual allegations of a complaint to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) When reviewing a judgment dismissing a complaint after the sustaining of a demurrer without leave to amend, we assume the truth of all of the properly pleaded and implied allegations of facts. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) Further, we give the complaint a reasonable interpretation by reading it as a whole and its various parts in context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) If the complaint does not state a cause of action, and the plaintiff does not show how the defects can be cured, we must affirm the judgment of dismissal if any of the grounds of demurrer is well taken. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1] (*Hendy*); *Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 21 [157 Cal.Rptr. 706, 598 P.2d 866].) On the other hand, if the complaint does state a cause of action, or the plaintiff shows a reasonable possibility the defects can be cured by amendment, we must reverse the judgment of dismissal. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

## B. Pertinent Statutes

The Government Claims Act (Gov. Code, § 810 et seq.) requires public employers to defend their employees under certain circumstances: "Except as otherwise provided in Sections 995.2 and 995.4, upon request of an employee or former employee, a public entity shall provide *for the defense of any civil action or proceeding brought against him [or her]*, in his [or her] official or individual capacity or both, on account of an act or omission in the scope of

his [or her] employment as an employee of the public entity." (Gov. Code, § 995, italics added.) "If after request a public entity fails or refuses to provide an employee or former employee *with a defense against a civil action or proceeding brought against him* and the employee retains his [or her] own counsel to defend the action or proceeding, [the employee] is entitled to recover from the public entity such reasonable attorney's fees, costs and expenses as are necessarily incurred by him [or her] *in defending the action or proceeding* if the action or proceeding arose out of an act or omission in the scope of his [or her] employment as an employee of the public entity . . . ." (Gov. Code, § 996.4, italics added.)

■ Similarly, the Labor Code requires employers to reimburse employees for the costs of defending lawsuits arising out of their employment: "An employer shall *indemnify* his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." (Lab. Code, § 2802, subd. (a), italics added.) Labor Code section 2802 "requires an employer to defend or indemnify an employee *who is sued by third persons* for conduct in the course and scope of his employment." (*Douglas v. Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 461 [123 Cal.Rptr. 683] (*Douglas*), italics added; accord, *Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 230 [51 Cal.Rptr.3d 527] (*Cassady*) ["Section 2802 . . . requires an employer to indemnify an employee *who is sued by third persons* for conduct in the course and scope of his or her employment, including paying any judgment entered and attorney's fees and costs incurred in defending the action." (italics added)]; *Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100 [93 Cal.Rptr.2d 425] (*Jacobus*) ["The statute requires the employer not only to pay any judgment entered against the employee for conduct arising out of his employment but also to defend an employee *who is sued* for such conduct." (italics added)].)

C. *Application of Pertinent Statutes to Thornton's Claims*

1. *Government Code Sections 995 and 996.4*

Thornton's primary argument on appeal is that she is entitled to reimbursement of the attorney fees and expenses she incurred in connection with the investigations by the district attorney and the Attorney General under the Government Claims Act. According to Thornton, the phrase "civil action or proceeding" in Government Code sections 995 and 996.4 includes an investigation that does not ultimately lead to a lawsuit. She contends this interpretation is required to avoid rendering the term "proceeding" redundant of the term "action" and to avoid an unjust result. As discussed below, we disagree.

■ The interpretation of the statutory language at issue in this case presents a pure question of law on which we exercise our independent judgment. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) Our primary task in interpreting a statute is to ascertain the Legislature's intent and to adopt an interpretation that best gives effect to that intent. (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42].) We examine the entire substance of a statute and the scheme of law of which it is a part to determine its scope and purpose, construe its words in context and harmonize its various parts. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) We begin by examining the statutory language because that is the most reliable indicator of legislative intent. (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860].)

The Government Claims Act does not define the phrase "civil action or proceeding," and no reported California decision has construed the phrase as it is used in Government Code sections 995 and 996.4. Nevertheless, the terms used in that phrase do have well-established meanings.

The term "action" generally means "[a] civil or criminal *judicial proceeding.*" (Black's Law Dict. (9th ed. 2009) p. 32, col. 2, italics added (hereafter Black's); see Webster's 3d New Internat. Dict. (2002) p. 21, col. 3 (hereafter Webster's) ["action" means "a legal proceeding by which one demands or enforces one's right *in a court of justice*" (italics added)].) As defined by statute, "[a]n action is an ordinary proceeding *in a court of justice* by which one party prosecutes another for [(1)] the declaration, enforcement, or protection of a right, [(2)] the redress or prevention of a wrong, or [(3)] the punishment of a public offense." (Code Civ. Proc., § 22, italics added.)

■ The more specific term "civil action," which has the same meaning as "civil suit" (*People v. Yartz* (2005) 37 Cal.4th 529, 538 [36 Cal.Rptr.3d 328, 123 P.3d 604] (*Yartz*)), refers to an action that arises out of an obligation or an injury and is prosecuted for the first or second purpose listed in Code of Civil Procedure section 22, but not for the third purpose (Code Civ. Proc., §§ 24, 25; see *Matter of Application of Clark* (1914) 24 Cal.App. 389, 394–395 [141 P. 831]; see also Black's, *supra*, at p. 34, col. 1 ["civil action" means "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation"].) Thus, the term "civil action" " 'covers the following: (1) [S]uits at law or in equity. [Citation.] (2) Certain adversary proceedings that take place during a probate proceeding. [Citation.] (3) Actions for declaratory relief. [Citations.] (4) Actions for divorce (dissolution of marriage). [Citation.].' " (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 673 [17 Cal.Rptr.3d 427].) The items on this list are all

legal proceedings that take place in a court; none is an investigation that takes place outside a court setting.

■ The term "proceeding" has broader application than the term "action." A "proceeding" is "[t]he regular and orderly progression *of a lawsuit,* including all acts and events between the time of commencement and the entry of judgment." (Black's, *supra,* at p. 1324, col. 1, italics added; see Webster's, *supra,* at p. 1807, col. 3 ["proceedings" means "the course of procedure *in a judicial action or in a suit in litigation*" (italics added)].) When used "in its general and well-known sense," the term "proceeding" "includes all steps taken and all things done, *wherein judicial procedure is instituted or judicial action invoked.*" (*Bruner v. Superior Court* (1891) 92 Cal. 239, 248 [28 P. 341], italics added (*Bruner*).) The term is " 'much used to *express the business done in courts,*' " and includes "[a]n act or step that is part of a larger action." (Black's, *supra,* at p. 1324, col. 1, italics added.) The term also includes a "special proceeding," i.e., a proceeding authorized by statute that affords new rights and remedies that may be judicially enforced, but that is neither an action at law nor a suit in equity. (Code Civ. Proc., §§ 21, 23; *Greenfield v. Superior Court* (2003) 106 Cal.App.4th 743, 748 [131 Cal.Rptr.2d 179] (*Greenfield*); *Boggs v. North American B. & M. Co.* (1937) 20 Cal.App.2d 316, 319 [66 P.2d 1253].) Thus, a "civil proceeding" includes all the steps of a "civil action," as well as an independent "special proceeding" asserting a civil right and seeking a civil remedy in a court.

■ It therefore appears that by using the phrase "civil action or proceeding" in Government Code sections 995 and 996.4, the Legislature intended to limit the scope of the duty of a public entity to defend an employee, and the related right of the employee to reimbursement if the entity does not provide a defense upon request, to the defense of formal proceedings of a civil nature against the employee in a court. Other language used in the statutes, which we must consider because a particular statutory phrase always has to be read in context (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218]), confirms this interpretation.

For example, a public employer's obligation is limited to the *"defense* of any civil action or proceeding *brought against* [the employee]." (Gov. Code, § 995, italics added.) And, the right to reimbursement is limited to reasonable attorney fees and other expenses necessarily incurred by the employee *"in defending* the action or proceeding." (*Id.,* § 996.4, italics added.) The term "defense" means a "defendant's stated reason why the plaintiff or prosecutor has no valid case; esp., a defendant's answer, denial, or plea" (Black's, *supra,* at p. 482, col. 2) and the term "defend" means to "deny, contest, or oppose

(an allegation or claim)" (*id.*, col. 1). (See Webster's, *supra*, at p. 591, col. 1 ["defend" means "to deny or oppose the right of a plaintiff in regard to (a suit or a wrong charged)"].) The phrase "brought against [the employee]" means the employee has been sued or has had legal proceedings instituted against him or her. (Black's, *supra*, at p. 219, col. 1 [defining "bring an action" as "[t]o sue; institute legal proceedings"]; Webster's, *supra*, at p. 278, col. 3 ["bring" means "to cause to occur or exist . . . INSTITUTE <~legal action> <~a complaint>"].) The use of the terms "defense," "defending" and "brought against" in conjunction with the phrase "civil action or proceeding" in Government Code sections 995 and 996.4 thus indicates the Legislature contemplated formal litigation activity, not merely investigative activity.

In addition, another provision of Government Code section 995 states: "For the purposes of this part, a cross-action, counterclaim or cross-complaint against an employee or former employee shall be deemed to be a civil action or proceeding brought against him [or her]." This provision also indicates the Legislature contemplated formal court proceedings when it used the phrase "civil action or proceeding" in Government Code sections 995 and 996.4, because cross-actions, counterclaims and cross-complaints are procedural devices used in civil litigation to reduce, eliminate or shift the liability for a plaintiff's claim. (See Code Civ. Proc., §§ 426.10 et seq. [compulsory cross-complaints], 428.10 et seq. [permissive cross-complaints]; Fed. Rules Civ.Proc., rule 13, 28 U.S.C. [counterclaims and cross-claims]; *Paragon Real Estate Group of San Francisco, Inc. v. Hansen* (2009) 178 Cal.App.4th 177, 186–187 [100 Cal.Rptr.3d 234] [defendant may file cross-complaint for equitable indemnity against codefendant]; *Holtzendorff v. Housing Authority* (1967) 250 Cal.App.2d 596, 636 [58 Cal.Rptr. 886] [counterclaims "tend to diminish or defeat plaintiff's recovery"].) Cross-actions, counterclaims and cross-complaints, however, are not used in preliminary investigations by law enforcement.

These same three litigation devices were mentioned by the California Law Revision Commission (the Commission) in its report recommending enactment of Government Code sections 995 and 996.4. (See Recommendation Relating to Sovereign Immunity, No. 4—Defense of Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) pp. 1305–1321.)[4] With respect to the defense obligation imposed by Government Code section 995, the Commission stated: "The public entity in defending a civil action or proceeding brought against a public employee could, under the recommended

---

[4] These statutes were enacted exactly as they were proposed by the Commission and have remained unchanged since then. (Compare Stats. 1963, ch. 1683, § 16, pp. 3302, 3303 with Gov. Code, §§ 995, 996.4.)

legislation, take any appropriate action necessary to defend the action or proceeding, *including the prosecution of a cross-action, counterclaim or cross-complaint by the employee against the plaintiff in the action being defended by the public entity.*" (4 Cal. Law Revision Com. Rep., *supra*, at p. 1307, italics added.) The Commission's "report is 'entitled to substantial weight in construing' " the Government Claims Act (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003, fn. 6 [47 Cal.Rptr.2d 478, 906 P.2d 440] (*Farmers Ins. Group*)), and the quoted statement, especially its reference to "the plaintiff in the action being defended," clearly indicates that when the Commission used the phrase "civil action or proceeding," it was referring to a lawsuit against the employee, *not* an investigation of the employee.

██ We find additional support for limiting the scope of Government Code sections 995 and 996.4 to the defense of civil court proceedings, and specifically excluding prelitigation investigations therefrom, in case law interpreting analogous language used in comprehensive general liability (CGL) insurance policies. Such policies typically require an insurer " '*to defend any suit against the insured* seeking damages on account of' " bodily injury or property damage. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 863 [77 Cal.Rptr.2d 107, 959 P.2d 265], italics added.)[5] Interpreting this language, our Supreme Court has held that an insurer's duty to defend includes a duty to pay investigative expenses "if, *and only if*," the investigation is "conducted within the temporal limits of the insurer's duty to defend, i.e., between tender of the defense and conclusion of the action." (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 60–61 [70 Cal.Rptr.2d 118, 948 P.2d 909], italics added.) The court later explained the reason for this temporal limitation: " 'The duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer.' [Citation.] Prior to the filing of a complaint, there is nothing for the insured *to tender defense of*, and hence no duty to defend arises. It follows therefore that site *investigation expenses incurred prior to the instigation of a lawsuit against the insured are not defense costs the insurer must incur.* That is because the insurer does not yet have a duty to defend the insured." (*Foster-Gardner, Inc.*, at p. 886, second italics added.) Similarly, under Government Code section 995, a public employer's duty to "provide for the defense of any civil action or proceeding brought against [an employee]" does not arise *until a lawsuit is filed against the employee*, and

---

[5] As previously noted, the term "suit" used in CGL policies is synonymous with the term "civil action" used in Government Code sections 995 and 996.4. (*Yartz, supra*, 37 Cal.4th at p. 538.)

the payment of the costs of any investigation conducted *before the commencement of such a lawsuit* is not included within the scope of the employer's duty.

■    For the foregoing reasons, we conclude a public employer's obligation under Government Code section 995 to defend an employee, and the employee's related right under Government Code section 996.4 to recover the costs of defense if the employer fails or refuses to provide a defense upon request, are limited to the defense of civil judicial proceedings against the employee. The obligation to defend, and the right to recover the costs of defense if the employer fails or refuses to provide a defense upon request, do not extend to preliminary investigations that do not result in civil judicial proceedings against the employee.

Thornton urges several grounds in support of her contention the phrase "civil action or proceeding" in Government Code sections 995 and 996.4 should be interpreted to include an investigation by law enforcement even if the investigation does not result in a lawsuit. None is persuasive.

■    First, Thornton contends we must interpret the term "proceeding" as used in Government Code sections 995 and 996.4 to include an investigation in order not to render it "superfluous" or "redundant" of the term "action." We, of course, agree that "[a] construction that renders some statutory language surplusage or redundant is to be avoided." (*Bernard v. Foley* (2006) 39 Cal.4th 794, 810–811 [47 Cal.Rptr.3d 248, 139 P.3d 1196].) Our interpretation does avoid redundancy, however. As we explained above, the term "proceeding" is more comprehensive than the term "action," because the term "proceeding" includes each procedural step taken in a lawsuit (*Bruner, supra,* 92 Cal. at p. 248), as well as an independent "special proceeding," which is not considered an "action" (Code Civ. Proc., §§ 21, 23; *Greenfield, supra,* 106 Cal.App.4th at p. 748).

Second, the cases cited by Thornton that interpreted the term "proceeding" to include an investigation do not involve statutes similar in language or purpose to those at issue here. For example, in *U.S. v. Vixie* (9th Cir. 1976) 532 F.2d 1277, 1278, the federal court of appeals held an administrative investigation constituted a proceeding within the meaning of a statute proscribing certain types of interference with any pending proceeding before a federal department or agency (18 U.S.C. § 1505). Unlike Government Code sections 995 and 996.4, however, the federal statute at issue in *Vixie* expressly referred to administrative proceedings, which typically include investigative and adjudicative functions (see, e.g., *U.S. v. Schwartz* (2d Cir. 1991) 924 F.2d

410, 423; *U.S. v. Browning, Inc.* (10th Cir. 1978) 572 F.2d 720, 723–724; see also Black's, *supra,* at p. 51, col. 2 ["administrative proceeding" means "[a] hearing, inquiry, *investigation,* or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative" (italics added)]). Thus, unlike Government Code sections 995 and 996.4, the statute at issue in *Vixie* contained no language that indicated it was limited to judicial proceedings.

■  Also irrelevant are the decisions in *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 355 [7 Cal.Rptr.3d 803, 81 P.3d 244], which held the privilege of Civil Code section 47, subdivision (b) for statements made in official proceedings applied to statements made to law enforcement personnel to report suspected criminal activity, and *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1435–1437 [246 Cal.Rptr. 609], which held the immunity of Government Code section 821.6 for prosecution of an administrative proceeding extended to an investigation that preceded disciplinary proceedings against a public employee. As we have already explained, the term "administrative proceeding" at issue in *Kemmerer* includes an investigation, but the phrase "civil action or proceeding" at issue in this case does not. Furthermore, for public policy reasons, the privilege statute at issue in *Hagberg* and the governmental immunity statute at issue in *Kemmerer* are construed very broadly. (See, e.g., *Silberg v. Anderson* (1990) 50 Cal.3d 205, 211, 213 [266 Cal.Rptr. 638, 786 P.2d 365] [Civ. Code, § 47, subd. (b) "has been given broad application" to afford litigants and witnesses "utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions"]; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048 [55 Cal.Rptr.3d 158] ["California courts construe [Government Code] section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits."].) By contrast, statutes like Government Code sections 995 and 996.4, which impose liability on public entities, are construed more narrowly in order to confine liability to the circumstances specifically set forth in the statutes. (See, e.g., *Teter v. City of Newport Beach* (2003) 30 Cal.4th 446, 451 [133 Cal.Rptr.2d 139, 66 P.3d 1225]; *Wright v. State of California* (2004) 122 Cal.App.4th 659, 672 [19 Cal.Rptr.3d 92].)

Third, and finally, Thornton invokes principles of fairness and justice in urging us to interpret the phrase "civil action or proceeding" as used in Government Code sections 995 and 996.4 to include investigations by law enforcement that do not culminate in a lawsuit. She contends such an interpretation is necessary to avoid "an unjust result: only public employees who are sufficiently culpable to actually be sued are entitled to attorney's

fees." According to Thornton, the Board should have to reimburse her because her cooperation with the investigating authorities "saved public funds and resources" by "preclud[ing] the filing of an unmeritorious action." She also complains the denial of reimbursement would be unfair because the Board, "apparently motivated by partisan politics," "engineered the necessity for the attorneys' fees." We are not persuaded.

■ Our duty as a court is to apply the governing statutes as written to the facts of the case before us, not to rewrite the statutes to make them more just or fair in particular circumstances. (Code Civ. Proc., § 1858; *Pacific Coast etc. Bank v. Roberts* (1940) 16 Cal.2d 800, 805 [108 P.2d 439]; *City of Susanville v. California Dept. of Corrections & Rehabilitation* (2012) 204 Cal.App.4th 377, 387 [138 Cal.Rptr.3d 721].) ■ Under the Government Claims Act, Thornton would be entitled to reimbursement of the attorney fees and other expenses she incurred in responding to the investigations of the circumstances of her hiring as an ALJ for the Board only if she satisfied the statutory requirements prescribed by the act, because "the intent of the act is . . . to confine potential governmental liability to rigidly delineated circumstances . . . ." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].) She did not satisfy those requirements, however, because the complaint shows the attorney fees and other expenses for which Thornton seeks reimbursement were incurred in responding to investigations of potential conflicts of interest in her hiring, not in "the defense of [a] civil action or proceeding brought against [her]." (Gov. Code, § 995; see *Shields v. County of San Diego* (1984) 155 Cal.App.3d 103, 113 [202 Cal.Rptr. 30] (*Shields*) [plaintiff asserting claim under Government Claims Act must plead facts establishing each statutory element of liability].) Thus, Thornton has no right to reimbursement under Government Code section 996.4, whether that result is perceived as "fair" or not.[6] If Thornton believes the result is unfair, she must address her grievance to the Legislature, not to this court. (See, e.g., *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 121 [48 Cal.Rptr.2d 42, 906 P.2d 1196] ["When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy."]; *Western/California, Ltd. v. Dry Creek Joint Elementary School Dist.*

---

[6] In any event, providing reimbursement to public employees who actually are sued but denying it to those who are merely investigated does not strike us as necessarily unjust. "[O]ne of the purposes of governmental defense statutes [is] to provide public employees acting in the scope of employment with a measure of protection from the harassment of vexatious lawsuits." (*Farmers Ins. Group, supra*, 11 Cal.4th at p. 1018.) A mere investigation that does not lead to the initiation of proceedings before a court having power to take adverse action against a public employee does not cause the employee the same degree of expense, stress or anxiety as does a lawsuit against the employee. (Cf. *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 736–737 [151 Cal.Rptr. 206] [plaintiff's inconvenience of persuading administrative agency during investigation not to institute formal proceedings was insufficient to support malicious prosecution action].)

(1996) 50 Cal.App.4th 1461, 1488 [58 Cal.Rptr.2d 220] ["It is, of course, up to the Legislature, and not the courts, to rewrite statutes."].)

## 2. *Labor Code Section 2802*

Thornton also argues Labor Code section 2802 entitles her to reimbursement of the attorney fees and expenses she incurred in connection with the investigations by the district attorney and the Attorney General. Again, we disagree.

Initially, we note existing case law applying Labor Code section 2802 does not support Thornton's claim for reimbursement. Although Labor Code section 2802 differs from Government Code section 996.4 in that the former does not expressly limit an employer's reimbursement obligation to the employee's costs of defending a civil action or proceeding, courts that have held an employer has a duty to reimburse an employee for defense costs under Labor Code section 2802 have done so *only* when the employee was sued by a third party. (See *Cassady, supra,* 145 Cal.App.4th 220 [employee sued by third party for professional negligence]; *Jacobus, supra,* 78 Cal.App.4th 1096 [employee sued by coworker for sexual harassment]; *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52 [1 Cal.Rptr.2d 808] [employee sued by third parties for personal injuries]; *Douglas, supra,* 50 Cal.App.3d 449 [employee sued by third party for invasion of privacy and violation of civil rights].) In contrast, an employee sued by his employer is not entitled to reimbursement for the costs of successfully defending against the lawsuit because the reimbursement obligation is phrased in terms of indemnity (Lab. Code, § 2802, subd. (a); see *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 342 [34 Cal.Rptr.3d 635] [Lab. Code, § 2802 is "basic indemnification statute"]), which implies an obligation to pay a judgment entered or expenses incurred in a lawsuit by a third party (*Nicholas Laboratories, LLC v. Chen* (2011) 199 Cal.App.4th 1240, 1248, 1251 [132 Cal.Rptr.3d 223]). Thus, under current case law, Labor Code section 2802 gives Thornton no right to reimbursement of the attorney fees and other expenses she incurred in responding to the investigations by law enforcement, because she was never sued by a third party.

In any event, to whatever extent Labor Code section 2802 would require the Board to reimburse Thornton for the attorney fees and other expenses she incurred in connection with the investigations, the statute would have to yield to Government Code section 996.4. When two statutes covering the same subject matter conflict, the more specific statute controls. (Code Civ. Proc., § 1859; *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310 [99 Cal.Rptr.2d 792, 6 P.3d 713].) Here, although Labor Code section

2802 and Government Code section 996.4 both give an employee a reimbursement right against the employer, Government Code section 996.4 is specific to the reimbursement of the costs of defending an employee *of a public entity*. And, as we explained in part IIC.1., *ante*, Government Code section 996.4 specifically limits the right of public employees to reimbursement of reasonable attorney fees, costs and expenses necessarily incurred in defending *actual* civil judicial proceedings, not in responding to or cooperating with investigations preliminary to *potential* civil judicial proceedings. As the more specific statute, therefore, Government Code section 996.4 would prevail over Labor Code section 2802 to defeat Thornton's reimbursement claim *even if* Labor Code section 2802 required employers to reimburse employees for investigation costs. (See *Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 179 [32 Cal.Rptr.2d 574] (*Los Angeles Police Protective League*) [specific provisions of Gov. Code, § 995.8 pertaining to public employer's defense of criminal action or proceeding against public employee control over general provisions of Lab. Code, § 2802]; see also *In re Work Uniform Cases, supra*, 133 Cal.App.4th at p. 341, fn. 12 [The Government Claims Act "is more specific than [Labor Code] section 2802 and is clearly applicable to the traditional use of that statute. Thus, even in the traditional area of indemnity for litigation expenses, it is likely that section 2802 has no application to public entities."].)

In her reply brief, Thornton urges us not to hold that a public employee's right to reimbursement from the employer for defense costs is governed by Government Code section 996.4 rather than by Labor Code section 2802, and, in particular, not to follow the rationale of *Los Angeles Police Protective League, supra*, 27 Cal.App.4th 168, which supports that holding. Thornton considers the rationale of that case "unjust" and inconsistent with the Legislature's intent "not to relegate public employees to second class status." In support of this argument, she cited Government Code section 996.6 at oral argument, although she did not cite or discuss that statute in her briefing. That statute provides: "The rights of an employee or former employee under this part are in addition to and not in lieu of any rights he [or she] may have under any contract or under any other enactment providing for his [or her] defense." (*Ibid.*) We reject Thornton's argument.

As an initial matter, we ordinarily do not consider arguments raised by an appellant for the first time in a reply brief because to do so would unfairly deprive the respondent of an opportunity to respond. (E.g., *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432].) More importantly, however, we agree with the rationale of the court in *Los Angeles Police Protective League, supra*, 27 Cal.App.4th 168. As that court explained, the Government Claims Act was enacted in 1963 "to provide

a comprehensive codification of the law of governmental liability and immunity" (*id.* at p. 174), and it did so by repealing all known statutes relating to defense of public employees and replacing them with the defense provisions of the act (*Los Angeles Police Protective League,* at pp. 180–181 & fn. 16; see Stats. 1963, ch. 1683, §§ 2, 3, 7–9, 21, pp. 3299, 3300, 3304–3305).[7] From this, the court concluded that to construe Labor Code section 2802 as applying to public employees claiming reimbursement of defense costs would render "superfluous" the specific provisions of the Government Claims Act regarding defense of public employees. (*Los Angeles Police Protective League,* at p. 180.) ▮ "Axioms of statutory interpretation," however, "counsel us to avoid such constructions." (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 333 [86 Cal.Rptr.3d 350, 197 P.3d 164].) ▮ The court further concluded that "it is clear the statutory enactments referenced in Government Code section 996.6 were *statutes yet to be enacted relating to specific public entities or specific conduct by public employees.*" (*Los Angeles Police Protective League,* at p. 182, italics added.) ▮ Because Labor Code section 2802 was enacted in 1937 (Stats. 1937, ch. 90, pp. 185, 258), many years before the Government Claims Act was enacted, and does not relate to either *specific public entities* or *specific conduct by public employees,* it is not among the enactments contemplated by Government Code section 996.6.[8] Thus, Labor Code section 2802 has no application to public employees seeking reimbursement of defense costs from their employers; their

---

[7] "Although Labor Code section 2802 was not included among these statutes, it must be remembered that *Douglas . . . , supra,* 50 Cal.App.3d 449, the case that first interpreted Labor Code section 2802 to provide indemnity for defense costs of any kind, did not occur until 1975, well after the 1963 enactment of the [Government] Claims Act." (*Los Angeles Police Protective League, supra,* 27 Cal.App.4th at p. 181, fn. 17.)

[8] We are not persuaded by Thornton's argument that Labor Code section 2802 falls within the meaning of the phrase "any other enactment providing for [a public employee's] defense" as used in Government Code section 996.6. Thornton correctly points out that an employee's right to reimbursement of defense costs under Labor Code section 2802 was not established until after the Government Claims Act was enacted in 1963, because *Douglas, supra,* 50 Cal.App.3d 449, the first California appellate decision to recognize such a right, was not decided until 1975. A decision from a court is not an "enactment," however, because that term refers to legislative, not judicial, action. (See Black's, *supra,* at p. 606, col. 2 ["enactment" means "[t]he action or process of making into law enactment of a legislative bill" or "[a] statute a recent enactment"]; Webster's, *supra,* at p. 745, col. 1 ["enact" means "to establish by legal and authoritative act : make into a law; *esp* : to perform the last act of legislation upon (a bill) that gives the validity of law"]; see also *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 594 [79 Cal.Rptr.3d 489] [enactment of law is legislative power that cannot be exercised by courts].) Moreover, even if Labor Code section 2802 as construed in *Douglas* satisfied the temporal requirement for inclusion among the enactments contemplated by Government Code section 996.6, it would not satisfy the additional requirements that it "relat[e] to specific public entities or specific conduct by public employees." (*Los Angeles Police Protective League, supra,* 27 Cal.App.4th at p. 182.) Hence, Labor Code section 2802 is not the type of enactment referenced in Government Code section 996.6.

reimbursement rights are governed exclusively by the Government Claims Act. (*Los Angeles Police Protective League*, at p. 182.)

## D. *Propriety of Trial Court's Sustaining Demurrer Without Leave to Amend*

■ As we explained above, because Thornton was a public employee, her right to reimbursement for defense costs is governed by Government Code section 996.4, not Labor Code section 2802. Thornton, however, did not allege facts essential to the establishment of a claim for reimbursement under Government Code section 996.4, namely, that a "civil action or proceeding" was initiated against her. Therefore, the trial court properly sustained the Board's demurrer to those claims. (See Code Civ. Proc., § 430.10, subd. (e) [demurrer is proper when complaint does not state facts sufficient to constitute cause of action]; *In re Work Uniform Cases, supra*, 133 Cal.App.4th at pp. 340–343 [demurrer to claim under Lab. Code, § 2802 properly sustained when statute did not apply to transaction alleged in complaint]; *Shields, supra*, 155 Cal.App.3d at p. 113 [demurrer to cause of action under Government Claims Act properly sustained when plaintiff did not allege "*sine qua non* of liability" under act].)

■ The trial court also properly denied leave to amend. Although a trial court must grant leave to amend after sustaining a demurrer if a plaintiff seeks such leave and shows how amendment will cure the defect in the complaint (Code Civ. Proc., § 472a, subd. (c); *Hendy, supra*, 54 Cal.3d at p. 742), in the trial court Thornton argued the complaint stated a cause of action and did not request leave to amend. ■ A plaintiff also may seek leave to amend for the first time on appeal (Code Civ. Proc., § 472c, subd. (a); *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 [68 Cal.Rptr.3d 295, 171 P.3d 20]), and at oral argument Thornton offered to amend her complaint to add details about her duties as chairperson of the Board and the nature of the investigations conducted by the district attorney and the Attorney General. But, the addition of those allegations would not cure the principal defect in her complaint, i.e., her inability to allege a civil action or proceeding was ever instituted against her based on the investigations, an allegation essential to a valid reimbursement claim under Government Code section 996.4. ■ Accordingly, because the nature of Thornton's claims is clear but the Board has no liability under the governing law, leave to amend is properly denied because no amendment could change the result. (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793]; *Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1020 [35 Cal.Rptr.3d 487].)

## DISPOSITION

The judgment is affirmed.

Haller, Acting P. J., and Aaron, J., concurred.