Filed 3/5/25  Din v. Medical Staff of Sutter Davis Hospital CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| ADNAN DIN, | C097519 |
| Plaintiff and Appellant, | (Super. Ct. No. CV2022-1117) |
| v. | |
| MEDICAL STAFF OF SUTTER DAVIS HOSPITAL, | |
| Defendant and Respondent. | |

Plaintiff Adnan Din worked as a general surgeon at Sutter Davis Hospital.  Din alleges that defendant Medical Staff of Sutter Davis Hospital (Medical Staff), an unincorporated association, made negligent and intentional misrepresentations about the status and effect of administrative investigations into his conduct, causing him to lose a job opportunity with a different employer.  The trial court sustained the Medical Staff's demurrer to Din's complaint after concluding that Din could not allege justifiable reliance on the Medical Staff's representations.  We agree with that conclusion and affirm the judgment.

1

## BACKGROUND

### I.

"Because this matter comes to us on demurrer, we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether plaintiff has stated a viable cause of action." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

In March 2018, the Medical Staff opened an administrative investigation into Din. The Medical Staff closed the investigation on May 20, 2019, without taking any adverse action. On May 29, 2019, Din received a letter from the Medical Staff's counsel stating that "any investigations pending against him had been closed."

On July 2, 2019, Din's attorney had a conversation with the Medical Staff's counsel in which the Medical Staff's counsel made several representations, including: (1) "There is no investigation pending against [Din]"; (2) "There are no restrictions on [Din's clinical] privileges"; (3) Din "is in good standing with the [h]ospital and Medical Staff"; (4) if Din decided "to resign or let his privileges lapse at the [h]ospital, [Din] would not suffer any negative consequences, and such actions were not reportable events"; (5) the Medical Staff's counsel "was unaware that there were any other complaints pending against [Din]"; and (6) at the last Medical Staff meeting in June 2019, "there was no discussion of any novel complaints against [Din]." The Medical Staff's counsel spoke frequently with the Medical Staff about Din and investigations into his performance. The Medical Staff's counsel also communicated with Din's attorney "on an almost daily basis."

On July 17, 2019, Din received a job offer from a different hospital. At 11:59 p.m. that night, Din emailed the Medical Staff and resigned immediately from the hospital.

On July 19, 2019, Din received a letter dated July 18, 2019, summarily suspending his clinical privileges at Sutter Davis Hospital. In January 2020, Din's July 2019 job offer was rescinded because of the suspension.

2

## II.

Din filed multiple lawsuits concerning the suspension of his clinical privileges and resignation. In the case at issue here, Din filed suit against the Medical Staff alleging negligent and intentional misrepresentation. The Medical Staff filed a demurrer to Din's complaint, and Din filed the operative first amended complaint, which also pleaded causes of action for negligent and intentional misrepresentation. The amended complaint alleged that the Medical Staff's counsel's July 2 representations to Din's attorney about the absence of investigations were false when they were made. Din claimed that his July 18, 2019 suspension could not have occurred "impulsively" and would have required "significant deliberation" such that it must have been planned and known to the Medical Staff's counsel at the time she made the representations. The amended complaint further alleged that Din resigned from his job in reliance on the Medical Staff's counsel's "representations that he could resign at any time, without issue from" the hospital. Din claimed that he suffered various injuries as a result of the Medical Staff's misrepresentations, including the rescission of his job offer, a requirement that he report his resignation and summary suspension on future job applications, and his inability to obtain employment as a general surgeon.

The Medical Staff filed a demurrer to the amended complaint and a special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16. At the hearing on the motion, the trial court questioned the parties about whether Din had adequately alleged justifiable reliance on the Medical Staff's representations. The Medical Staff noted that there were "a lot of events that occur[ed]" between the July 2 conversation and Din's July 17 resignation, including a procedure performed by Din on July 17 that was the basis for the suspension. Noting that Din never inquired about his status after July 2, the Medical Staff argued that it was not reasonable for him to ask once, wait two weeks, and then resign without checking again. Din acknowledged the sequence of events but argued that the July 17 suspension involved cases that predated

3

the July 2 conversation, creating a factual question that could not be resolved on demurrer regarding whether his suspension rested on the intervening circumstances. The Medical Staff additionally noted that an individual case could be "under review" without being "under investigation" such that it would trigger a reporting requirement; had Din resigned on July 2, there would have been no reportable event because his pending cases were "under review," but he was not "under investigation" and his clinical privileges had not been suspended. The trial court took the matter under submission.

In a written order, the trial court sustained the demurrer without leave to amend. Considering the "circumstances under which the misrepresentations were made[] and the knowledge, education and experience of the plaintiff claiming reliance," the court concluded that it was not reasonable for Din to accept the representations of the Medical Staff's counsel "without an independent inquiry." The court denied the motion to strike as moot. It entered judgment in favor of the Medical Staff.

Din filed a timely notice of appeal.

DISCUSSION

Din contends that the trial court erred when it sustained the demurrer, arguing that he sufficiently pleaded justifiable reliance on the Medical Staff's representations in the July 2 conversation.

"A demurrer tests the legal sufficiency of the factual allegations of a complaint to state a cause of action." (*Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1411.) On appeal from a dismissal after an order sustaining a demurrer, " ' "we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." ' " (*Silva v. Langford* (2022) 79 Cal.App.5th 710, 715.) To evaluate the complaint, we assume the truth of all material facts properly pleaded in the complaint. (*Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.) We also accept as true facts that are reasonably implied or may be inferred from the complaint's express allegations. (*Ibid.*)

4

We do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1189.)  We do not consider "the substance of declarations, matter not subject to judicial notice, or documents judicially noticed but not accepted for the truth of their contents." (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.)

The causes of action for both negligent and intentional misrepresentation require a plaintiff to establish justifiable reliance.  The elements of a negligent misrepresentation claim are:  " '(1) [T]he misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' " (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1252.) Intentional misrepresentation requires " ' "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.)

"Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.)  Reliance is justifiable when the circumstances make it reasonable for the "plaintiff to accept [the] defendant's statements without an independent inquiry or investigation." (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 864.)  "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." (*Ibid.*)  "[I]f the conduct of the [plaintiff] in the light of his own intelligence and information, or ready availability of information, was manifestly unreasonable, he will be denied a recovery." (*Kahn v. Lischner* (1954) 128 Cal.App.2d

5

480, 489.) "Justifiable reliance is ordinarily a question of fact that is not properly determined on demurrer, but 'whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts,' which facts include consideration of 'the knowledge, education and experience' of the person whose reliance is at issue." (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1111 [no justifiable reliance for physician relying on medication promotional materials that were more than 10 years old].) " 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable' " is not susceptible to resolution on demurrer. (*Alliance Mortgage Co. v. Rothwell*, *supra*, at p. 1239.)

We agree with the trial court that the allegations in this case preclude a finding of justifiable reliance as a matter of law. The amended complaint alleges that the Medical Staff's July 2 representations led Din to conclude that he "could resign at any time, without issue from" the hospital. But even under the most generous reading of Din's allegations, the statements made by the Medical Staff's counsel in the July 2 conversation could not have engendered justifiable reliance on such a conclusion. The statements advised Din that there were currently no open investigations or complaints against him and that if he resigned, as of July 2, there would be no reportable events and Din would suffer no negative consequences. The representations about Din's status were in the present and past tense, and one of the statements explicitly tied the status update to discussions at a June 2019 Medical Staff meeting. The alleged statements did not represent that Din would never be investigated in the future; nor did they suggest that he could "resign at any time" in the future without consequence. The alleged statements did not represent that there was no possibility of future investigations or reviews, that there were no potential investigations in the pipeline, or that a change in circumstances would not prompt further investigations or a suspension of clinical privileges. Din did not resign until more than two weeks after the representations and did not check with the

6

Medical Staff's counsel after July 2, despite the allegation that his attorney and the Medical Staff's counsel were communicating on an "almost daily basis." Given Din's knowledge, education, and experience and his subjective awareness after the July 2 conversation that resigning with an open investigation or after his clinical privileges had been suspended could constitute a reportable event, we conclude that it was unreasonable for him to assume that nothing had changed before he resigned.

Moreover, as the trial court noted, the Medical Staff's counsel was essentially a legal adversary at the time of the representations. In *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331, on which the trial court relied, the defendant made representations to a woman to induce her to dismiss a lawsuit, including statements that she should abandon the case because it would preserve her relationship with the opposing party, would save money in attorneys' fees, and would lead to a monetary payment. The woman's conservator sued, claiming that the representations were false. (*Ibid.*) The appellate court concluded that the conservator had not adequately alleged justifiable reliance because the woman had been represented by counsel at the time of the statements and it would not be reasonable to accept the defendant's "representations as an *adversary* without an independent inquiry." (*Id.* at p. 1332.) Likewise, here, Din was represented by counsel, and at least one portion of the alleged misrepresentations—that Din would not suffer negative consequences if he resigned and resigning or allowing his privileges to lapse would not be reportable events—concerns the legal effects of the Medical Staff's actions on which his own attorney would advise him. Thus, consistent with *Wilhelm*, it was unreasonable for Din to accept the Medical Staff's representations "without an independent inquiry." (*Ibid.*)

Citing a letter appended to his opposition to the Medical Staff's anti-SLAPP motion, Din argues that his summary suspension was based on investigations predating the July 2 conversation that the Medical Staff's counsel had assured him were closed. The letter was not attached to or incorporated into the amended complaint; but even if we

7

were to consider the letter, it would not assist Din. The letter explains that the Medical Staff decided to summarily suspend Din's clinical privileges on July 17 based on a "patient care incident" that had occurred earlier that day, as well as the "pattern of significant complications" in his recent surgeries shown by several other surgical cases that were previously referred for review. Thus, even if the summary suspension was based in part on investigations preceding July 2, as Din asserts, it was not reasonable for Din to conclude that a representation that any earlier investigation was closed meant that his performance would not continually be reviewed or that past investigations would have no relevance to disciplinary decisions prompted by new facts or circumstances. Nothing in Din's argument therefore persuades us that the amended complaint adequately alleged justifiable reliance.[1]

---

[1] Shortly before oral argument, Din filed a request for judicial notice of a privilege log that was filed in a separate case currently pending before the trial court. The Medical Staff opposed the request. Because Din's request seeks judicial notice of the truth of the contents of the privilege log and his interpretation of them, the request is denied. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483.)

DISPOSITION

The judgment is affirmed.  The Medical Staff shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
FEINBERG, J.


We concur:


/s/
HULL, Acting P. J.


/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.